No. 85–660. COLORADO *v.* CONNELLY. Sup. Ct. Colo. Motion of Duane Woodard, Attorney General of Colorado, et al. for leave to file a brief as *amici curiae* granted. Motion of respondent for leave to proceed *in forma pauperis* and certiorari granted. In addition to the question presented by the petition for writ of certiorari, the parties are requested to brief and argue the following question: "Did respondent's mental condition render his waiver of *Miranda* rights ineffective?" Application for stay, presented to JUSTICE WHITE, and by him referred to the Court, is granted pending the issuance of the mandate of this Court. 

Memorandum of JUSTICE BRENNAN, with whom JUSTICE STEVENS joins.

This grant of certiorari is yet another instance supporting the concern that the Court shows an unseemly eagerness to act as "the adjunct of the State and its prosecutors in facilitating efficient and expedient conviction . . . ." *Wainwright* v. *Witt,* 469 U. S. 412, 463 (1985) (BRENNAN, J., dissenting). Most often, this concern has been evoked by the Court's overly narrow interpretations of the Constitution's fundamental guarantees and the laws established to secure relief from violations of those guarantees. See *ibid.; United States* v. *Leon,* 468 U. S. 897, 928–929 (1984) (BRENNAN, J., dissenting). However, the Court's willingness to take special judicial action to assist the prosecutor has not been limited to its interpretations of substantive law. For example, in *New Jersey* v. *T. L. O.,* 469 U. S. 325 (1985), reargument was directed on a constitutional question not raised by either party because it provided a broader basis for upholding the State's action. Similarly, two Terms ago, JUSTICE STEVENS noted the "quite striking" fact that during the preceding two-and-a-half years the Court had summarily reversed, without briefing or oral argument, 19 criminal cases—every one on the petition of the warden or the prosecutor and every one in his favor. *Florida* v.

*Meyers*, 466 U. S. 380, 385–387, and n. 3 (1984) (STEVENS, J., dissenting). Nothing has changed in the year and a half since that decision, for, although in the immediate wake of JUSTICE STEVENS' dissent the Court did summarily reverse a few convictions on the petition of a criminal defendant, the trend to grant summary dispositions only in favor of the prosecutor has resumed and the record now stands at 26–4.[1] No particularly informed understanding of statistics is required to appreciate that the likelihood of courts so consistently erring in favor of defendants is truly remote and that only a one-sided exercise of discretion can explain these results.

The Court's treatment of this case provides another clear example of why there is concern that the Court engages in injudicious efforts to assist prosecutors. Today, the Court takes the unprecedented step of rewriting a prosecutor's certiorari petition for him, enabling him to seek reversal on a ground he did not present himself.[2]

Respondent approached a uniformed police officer and stated that "he had killed someone" and wanted to tell the officer about it. Before questioning respondent about the killing, the officer informed respondent of his *Miranda* rights. Respondent waived

---

[1] The four cases since *Florida* v. *Meyers* decided in favor of a criminal defendant are: *Payne* v. *Virginia*, 468 U. S. 1062 (1984) *(per curiam); Thompson* v. *Louisiana*, 469 U. S. 17 (1984) *(per curiam); Smith* v. *Illinois*, 469 U. S. 91 (1984) *(per curiam);* and *Lanier* v. *South Carolina, ante*, p. 25 *(per curiam).* The seven cases decided in favor of the warden or prosecutor during that same period are: *Massachusetts* v. *Upton*, 466 U. S. 727 (1984) *(per curiam); Florida* v. *Rodriguez*, 469 U. S. 1 (1984) *(per curiam); United States* v. *Woodward*, 469 U. S. 105 (1984) *(per curiam); United States* v. *Gagnon*, 470 U. S. 522 (1985) *(per curiam); United States* v. *Benchimol*, 471 U. S. 453 (1985) *(per curiam); Delaware* v. *Fensterer, ante*, p. 15 *(per curiam);* and *Pennsylvania* v. *Goldhammer, ante*, p. 28 *(per curiam). Payne, Thompson*, and *Smith* followed closely after JUSTICE STEVENS' dissent in *Florida* v. *Meyers.* Since *Smith* was decided on December 10, 1984, however, five of the last six summary dispositions have been in favor of the prosecution.

I am not suggesting that all the summary judgments awarded to the prosecution were incorrect or improper, although I did not agree with the result in many of the cases. It is the Court's selective employment of its summary disposition power only in favor of the prosecution that is most disturbing.

[2] This action is even less justifiable than the improper decision to order reargument in *New Jersey* v. *T. L. O.*, 469 U. S. 325 (1985), since here the Court cannot even point to having heard oral argument as justification for revising the issues presented to suit its own desires.

his rights and proceeded to confess to the murder of a young girl. After being charged with murder, respondent moved to suppress his statements as made involuntarily. A psychiatrist testified that respondent believed that the voice of God had commanded him to confess or commit suicide. The psychiatrist testified that respondent was suffering from "chronic paranoid schizophrenia" and "command auditory hallucinations" when he confessed and that respondent's actions were not the product of a free will. The trial court suppressed statements made both before and after the *Miranda* warnings were given on the ground that respondent's mental state rendered these confessions involuntary and tainted his waiver of the *Miranda* rights. The Colorado Supreme Court affirmed, and this petition followed. The prosecutor carefully limited his petition to this Court to challenge only the suppression of respondent's initial, unsolicited statements. The petition expressly states that "[respondent's] later confession, which involves a *Miranda* issue, is not an issue in this petition." Pet. for Cert. 15. Despite this, the Court directs the parties to brief and argue that issue.

We do not know why the prosecutor chose not to seek review of the *Miranda* issue. But, whatever the reason, review was *not* sought, and it is hardly for this Court to "second chair" the prosecutor to alter his strategy or guard him from mistakes. Under this Court's Rule 21.1(a), "[o]nly the questions set forth in the petition or fairly included therein will be considered by the Court." Given petitioner's express disclaimer that the *Miranda* issue is presented, that question obviously is not "fairly included" in the question submitted. The Court's direction that the parties address it anyway makes meaningless in this case the provisions of this Rule and is plainly cause for concern, particularly since it is clear that a similar dispensation would not be granted a criminal defendant, however strong his claim. In asking the parties to address issues that the State chose not to present in the petition for certiorari, the Court goes beyond a mere philosophic inclination to facilitate criminal prosecution: the Court gives the appearance of being not merely the champion, but actually an arm, of the prosecution.[3]

---

[3] I express no views about the merits of the issues on which certiorari is now granted. See *Ohio ex rel. Eaton* v. *Price*, 360 U. S. 246 (1959) (statement of BRENNAN, J.).

I realize that, in itself, this order is not a matter of great significance. But even matters of small effect can cloak issues of great moment. In making the specific guarantees of the Bill of Rights a part of our fundamental law, the Framers recognized that limitless state power afflicts the innocent as well as the guilty, that even a crime-free world is not worth the fear and oppression that inevitably follow unrestricted police power, and that a truly free society is one in which every citizen—guilty or innocent—is treated fairly and accorded dignity and respect by the State. Of course, the Framers could not foresee the shape our society would take as the Nation developed. Nor could they foresee how the police function would evolve to keep pace. Rather, it has fallen to this Court—the "ultimate interpreter of the Constitution," *Baker* v. *Carr*, 369 U. S. 186, 211 (1962)—to enforce the rights enshrined in the Bill of Rights and preserve the principles established in 1789. Ours is the duty to prevent encroachment on these principles by overzealous police in the discharge of their great responsibility to prevent crime. Every law-abiding citizen shares with the Court the belief that the prevention of crime is an essential governmental function. However, the Members of this Court have the special responsibility to recognize that, as essential as is the goal of preventing crime, "the Court must be ever mindful of its primary role as the protector of the citizen and not the warden or the prosecutor." *Florida* v. *Meyers*, 466 U. S., at 387 (STEVENS, J., dissenting). This Court has, sadly, lost sight of this role, to the detriment of the rights of each of us. I can only repeat: "One can only hope that this day too will soon pass." *Wainwright* v. *Witt*, 469 U. S., at 463 (BRENNAN, J., dissenting).