**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Roger R. CLEMENTS, Defendant-Appellant.**

**No. 85CA0007.**

Colorado Court of Appeals, Div. II.

Nov. 6, 1986.

Rehearings Denied Dec. 24, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Curt P. Kriksciun, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Judith R. Caro, Sp. Deputy State Public Defender, Barbara S. Blackman, Deputy State Public Defender, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Roger R. Clements, appeals the judgments of conviction entered upon jury verdicts finding him guilty of criminally negligent child abuse resulting in death and of criminally negligent homicide. He contends that the trial court erred by (1) admitting his four-year-old daughter's statements under the excited utterance exception to the hearsay rule; (2) allowing an expert to comment on his daughter's credibility; (3) admitting his statements to law enforcement officers as voluntary; (4) instructing the jury on the offense of criminally negligent homicide; (5) denying his motion for judgment of acquittal; and (6) failing to give adequate consideration to mitigating factors in imposing sentence. We affirm defendant's conviction for criminally negligent child abuse resulting in death, vacate the judgment of conviction for criminally negligent homicide, and remand the cause with directions.

At mid-morning on June 17, 1983, defendant arrived at the Lakewood fire station carrying his three-month-old daughter. He was visibly upset and told a fire department medic that he found the baby in her present condition after he had left her for about two minutes. The baby was neither moving nor breathing, and attempts to revive her at the fire station and at a nearby hospital were unsuccessful.

Meanwhile, because of statements made by defendant at the fire station, two uniformed police agents were dispatched on a welfare check to take charge of defendant's other two children, Stephanie, age 4, and Kimberly, age 2, who had been left alone at the family home. Stephanie answered the door, crying and very upset. She told the agent, "My baby is in the hospital; she's been hurt." During a conversation about the room's furnishings, she said, out of context, "My daddy hurt my baby." Agent Andrews then asked how and why the baby had been hurt. Stephanie responded that her daddy had placed the baby on his bed and had put a pillow over the baby because she was crying and that he would not stop even after Stephanie told him to.

Later, while agent Andrews was putting on the children's shoes, Stephanie, without

prompting, said there was glass on the floor. When asked how the glass got there, Stephanie replied that her "daddy threw it" because he was "mad that the baby wouldn't stop crying." Agent Andrews was permitted to testify at trial to what Stephanie said.

Upon learning of Stephanie's statements, the detectives at the hospital advised defendant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant and his wife then viewed the body of their daughter. Shortly thereafter, the detectives re-advised defendant of his *Miranda* rights, which he stated he understood, and proceeded to question him.

Initially, defendant denied placing a pillow over the baby's head. However, after further questioning and after being told of the statements made by Stephanie, defendant admitted that he had placed a pillow over the baby's head to keep her from crying. This statement and two later statements—one made the same day and one made the next day—were admitted into evidence at trial. Defendant did not testify.

Conflicting expert medical testimony was presented at trial. The prosecution presented testimony from two experts. The first, the pathologist who performed the autopsy on the baby, testified that, in his opinion, the baby died of suffocation. He noted that hyperinflation of the lungs and petechiae hemorrhages on the eyelid were physical findings consistent with death caused by asphyxia.

The second, Dr. Richard Krugman, Director of the Kempe National Center for the Prevention and Treatment of Child Abuse, also testified as an expert in pediatric medicine and child abuse and neglect. Dr. Krugman identified six diagnostic features which he used to determine whether a child's injury or death was a result of child abuse or was accidental: a "discrepant history" given by the child's caretaker; crisis and stress in the life of the alleged

abuser; a "triggering event" contributed to by the child; social isolation experienced by the caretaker; a history of inadequate parenting or abuse experienced by the caretaker; and unrealistic expectations for the child on the part of the caretaker. Dr. Krugman applied the facts of this particular case to his medical model and concluded that, in his opinion, the baby's death was not accidental.

The defense also presented expert medical testimony to support its theory of the case. The defense expert accepted the fact that a pillow had been placed over the baby's head, but concluded this could not have caused death. He opined that the physical findings, including the petechiae hemorrhages and over-inflated lungs, were consistent with his opinion that the baby had died of Sudden Infant Death Syndrome.

At the conclusion of the evidence, the jury was instructed to consider the charges of criminally negligent homicide and felony child abuse resulting in death as separate and distinct offenses. The jury returned guilty verdicts on each charge, and defendant was subsequently sentenced to serve concurrent sentences of four years for child abuse and two years for criminally negligent homicide.

I.

Defendant first contends that the trial court erred when it admitted the statements made by defendant's four-year-old daughter, Stephanie, to agent Andrews under the excited utterance exception to the hearsay rule. Defendant argues that the statements were made in response to questioning and, therefore, were neither spontaneous nor made under the influence of a startling event, as required by the excited utterance exception. We disagree.

Hearsay statements are admissible under the excited utterance exception in CRE 803(2) if: (1) there was some occurrence or event sufficiently startling to ren-

der normal reflective thought processes of an observer inoperative; and (2) the statement of the declarant was a spontaneous reaction to the occurrence or event and not the result of reflective thought. *W.C.L. v. People*, 685 P.2d 176 (Colo.1984). An inquiry, especially when it is of a general nature and is addressed to a child of tender years, is not in and of itself sufficient to undo the underlying basis of reliability for the excited utterance exception. *People in Interest of O.E.P.*, 654 P.2d 312 (Colo. 1982).

█ The record shows that Stephanie was very upset and had been crying prior to her statements. The statements were made within two hours of the time defendant had rushed out of the house carrying her baby sister. Each initial statement—that her daddy had hurt the baby and that there was glass on the floor—related to a startling event while Stephanie was under the stress of excitement caused by the event. *See* CRE 803(2). Stephanie's subsequent statements were in response to general, open-ended questioning which occurred immediately after her spontaneous remarks. Accordingly, under these circumstances, we conclude that the trial court did not err in admitting Stephanie's statements as excited utterances.

## II.

Defendant next asserts, and Dr. Krugman's testimony discloses, that Dr. Krugman relied on the truthfulness of Stephanie's statements in utilizing the "discrepant history" factor to arrive at his opinion that the baby had died as a result of child abuse. Defendant argues that, by so testifying, Dr. Krugman impermissibly expressed an opinion as to the truthfulness of Stephanie's statements, contrary to CRE 608(a) and the rules announced in *Tevlin v. People*, 715 P.2d 338 (Colo.1986); and *People v. Koon*, 713 P.2d 410 (Colo.App.1985).

Relying on *People v. Vollentine*, 643 P.2d 800 (Colo.App.1982), the People argue

that no error occurred because the doctor's opinion could properly be based on the "assumed truth" of the statements. Dr. Krugman did not testify either that he "believed" the statements, or that he "assumed" their truth—only that he utilized them in the application of his theory.

In any event, there was no contemporaneous objection to Dr. Krugman's testimony on the basis now asserted. Therefore, reversal of the conviction is warranted only if the admission of that testimony represents plain error. *People v. Rubanowitz*, 688 P.2d 231 (Colo.1984).

Because that standard is applicable, we do not decide whether the doctor's testimony constituted an impermissible comment on truthfulness. Rather, we conclude that, whether or not it did so, its admission into evidence was not plain error.

█ Plain error is established only upon a showing that (1) an error affected the substantial rights of the defendant and (2) the record reveals a reasonable possibility that the error contributed to his conviction. *People v. Rubanowitz, supra.* Hence, we conclude that the error, if in fact it was error, did not contribute to defendant's conviction.

In *Tevlin v. People, supra,* and *People v. Koon, supra,* expert and lay witnesses commented upon the truthfulness of statements made by the victim. In each case, the credibility of the victim's story was a central issue at trial.

In contrast, here, the evidence was uncontradicted that defendant placed a pillow over his baby daughter's head to stop her from crying. The issue was whether he did that knowingly, recklessly, or negligently (by cruelly punishing the baby) such that it caused the baby's death, as the prosecution contended, or whether, as defendant contended, the baby died of Sudden Infant Death Syndrome.

Dr. Krugman's testimony was directed to the prosecution's theory that defendant held the pillow onto the baby. But the jury

determined, in its answer to a special interrogatory, that the child abuse consisted only of "placing the baby in a situation that endangered her life or health," *i.e.*, under the pillow, and "did not consist of cruelly punishing the baby," *i.e.*, holding the pillow onto the baby.

Consequently, Dr. Krugman's testimony concerning the truthfulness of Stephanie's statement that defendant had "hurt" the baby after she "told him to stop" had to have been disregarded by the jury in reaching its verdict. Thus, since the jury rejected the prosecution's theory, any error in admitting Dr. Krugman's testimony was vitiated.

### III.

Defendant next contends that the trial court erred when it found that he had effectively waived his *Miranda* rights and admitted his statements as being voluntary. He argues that his initial statement at the hospital, made shortly after the baby was pronounced dead, was involuntary because of his emotional condition, and therefore, the trial court's findings and conclusions as to voluntariness and effective waiver were unsupported by the record. We disagree.

### A.

#### Effective Waiver

■ The prosecution must prove by clear and convincing evidence that a defendant voluntarily, knowingly, and intelligently waived his *Miranda* rights. *People v. Connelly*, 702 P.2d 722 (Colo.1985) cert. granted, *Colorado v. Connelly*, — U.S. ——, 106 S.Ct. 785, 88 L.Ed.2d 763 (1986). The mental condition of the defendant is a relevant consideration in determining whether a defendant effectively waived his rights. *People v. Connelly, supra.*

The trial court found that defendant was advised of his *Miranda* rights prior to each statement and that in each instance defend-ant effectively waived those rights. Although conflicting evidence was presented concerning defendant's emotional state, a trial court is necessarily in a better position to weigh the evidence. *People v. Fish*, 660 P.2d 505 (Colo.1983). Since a review of the record shows ample evidence to support the trial court's findings, we may not disturb them on appeal. *See People v. Corley*, 698 P.2d 1336 (Colo.1985).

### B.

#### Voluntariness

■ The burden is upon the prosecution to prove by a preponderance of the evidence that a defendant's statements were voluntary. *People v. Connelly, supra*. The test of voluntariness is whether the challenged statement was the product of a rational intellect and a free will, unaffected by improper influence, coercion, threats, or promises. *People v. Raffaelli*, 647 P.2d 230 (Colo.1982). In determining voluntariness, the trial court is required to assess the totality of circumstances surrounding the statement, including the atmosphere and events surrounding the elicitation of the statement, the conduct of defendant before and during the interrogation, and the defendant's mental condition at the time the statement is made. *People v. Smith*, 716 P.2d 1115 (Colo.1986); *People v. Freeman*, 668 P.2d 1371 (Colo.1983).

■ The trial court considered all the relevant factors, including the emotional state of the defendant, prior to each of his statements. In each instance, the trial court found that, while defendant was upset, he was coherent and conversing in a calm manner. Although conflicting testimony was presented, including testimony from a psychiatrist on the effects of grieving, our review of the record again reveals sufficient evidence to support the trial court's findings, and we are bound by them. *See People v. Corley, supra.*

### IV.

Defendant next argues that the trial court erred when it entered separate judg-

ments of conviction and sentences for the crimes of criminally negligent homicide and criminally negligent child abuse resulting in death because, he asserts, the former crime is a lesser included offense of the latter. We agree.

Section 18–1–408(1), C.R.S. (1986 Repl. Vol. 8B), authorizes the prosecution for multiple offenses arising out of the same criminal conduct, but expressly prohibits multiple convictions when one is included within and is a lesser offense than the other. For purposes of this statutory prohibition, an offense is lesser included when, it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Section 18–1–408(5)(a), C.R.S. (1986 Repl. Vol. 8B). *See People v. Bartowsheski*, 661 P.2d 235 (Colo.1983).

Section 18–6–401, C.R.S. (1986 Repl. Vol. 8B) provides in pertinent part that a person commits the crime of criminally negligent child abuse resulting in death if, through criminal negligence, he causes or permits a child under the age of 16 years to be placed in a position that endangers the child's life, or he cruelly punishes the child, and his acts cause the death of the child. Section 18–3–105, C.R.S. (1986 Repl. Vol. 8B), provides: "Any person who causes the death of another person by conduct amounting to criminal negligence commits criminally negligent homicide."

■ It is apparent from the statutory framework that, in order to sustain the charge of criminally negligent homicide, the prosecution was not required to prove any additional elements beyond those necessary to prove criminally negligent child abuse resulting in death. Consequently, § 18–1–408(1), C.R.S. (1986 Repl. Vol. 8B) precludes defendant's simultaneous convictions for the greater offense of criminally negligent child abuse resulting in death and the lesser included offense of criminally negligent homicide. Thus, the judgment of conviction and sentence for the latter offense must be vacated. Because the jury

found defendant guilty of criminally negligent child abuse resulting in death, on remand the trial court should impose a sentence only for this offense.

## V.

Defendant next contends that there is inadequate evidence in the record to support his convictions. He argues that the evidence in the record is uncontradicted that placing a pillow over a baby's head would not cause death. We disagree.

When resolving a sufficiency of the evidence issue, the relevant evidence, both direct and circumstantial, viewed as a whole in the light most favorable to the prosecution, with the benefit of every reasonable inference, must be sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Barker*, 713 P.2d 406 (Colo.App.1985).

■ Defendant's admission that he put a pillow over the baby's head and the expert testimony of two physicians that the baby suffocated constituted sufficient evidence from which a jury could find beyond a reasonable doubt that defendant negligently caused the death of the baby. Consequently, we decline to reverse defendant's conviction.

## VI.

Defendant finally argues that the trial court abused its discretion when it placed undue emphasis on the severity of the crime and did not properly consider certain mitigating factors in imposing sentence. We disagree.

■ In imposing a sentence, the trial court must weigh many factors, including the nature of the offense and the record of the offender, and must impose a definite sentence within the presumptive range unless it concludes that extraordinary mitigating or aggravating factors are present. Section 18–1–105, C.R.S. (1986 Repl. Vol.

8B). The trial court is allowed wide latitude on such matters, and its determination will not be overturned absent a showing of an abuse of discretion. *See People v. Vela,* 716 P.2d 150 (Colo.App.1985); *People v. Piro,* 701 P.2d 878 (Colo.App.1985).

After noting the severity of the offense, the fact that defendant had no prior criminal record and that defendant was not a danger to society, the trial court sentenced defendant to the minimum sentence within the presumptive range. The trial court did not find any extraordinary mitigating factors. Under these circumstances, we conclude that the trial court's findings are supported by the evidence, reflect a proper balancing of mitigating and aggravating factors, and do not give undue weight to any one factor. *See People v. Piro, supra.* Thus, there was no abuse of discretion.

The judgment of conviction and sentence for criminally negligent homicide is vacated, the judgment of conviction for criminally negligent child abuse resulting in death is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

SMITH and STERNBERG, JJ., concur.