2015 CO 36M

**The PEOPLE of the State of Colorado,
Petitioner/Cross–Respondent**

v.

**Rashaim Malique DAVIS,
Respondent/Cross–
Petitioner**

**Supreme Court Case No. 12SC236**

Supreme Court of Colorado.

June 1, 2015

As Modified on Denial of Rehearing
August 3, 2015

Attorneys for Petitioner/Cross–Respondent: Cynthia H. Coffman, Attorney General, Matthew S. Holman, First Assistant Attorney General, Denver, Colorado

Attorneys for Respondent/Cross–Petitioner: Douglas K. Wilson, Public Defender, Lynn Noesner, Deputy Public Defender, Denver, Colorado

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 We consider whether to adopt, pursuant to the United States Supreme Court's decision in *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), a new competency standard for mentally ill defendants who wish to waive the Sixth Amendment right to counsel. We decline to create such a standard because our existing two-part framework for determining whether a defendant has validly waived the right to counsel affords trial courts sufficient discretion to consider a defendant's mental illness. As such, we reverse the court of appeals' decision to create a new standard in light of *Edwards*.

¶ 2 We also consider whether the court of appeals violated double jeopardy principles when it failed to order the trial court to merge Respondent/Cross–Petitioner Rashaim Malique Davis's possession and distribution convictions during sentencing. Relying on our decision in *People v. Abiodun*, 111 P.3d 462, 465 (Colo.2005), we reverse the judgment of the court of appeals on this double jeopardy question.[1]

1. We granted certiorari to review the following issues:
 1. Whether, pursuant to *Indiana v. Edwards*, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), this court should adopt a standard of competency for pro se representation different than that established in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

2. Where the prosecution relied on the same quantum of drugs to support two convictions for distribution and possession, do double jeopardy and merger principles require that the possession conviction be vacated?

## I. Facts and Procedural History

¶ 3 The People charged Davis with possession and distribution of a schedule II controlled substance after Davis allegedly sold 0.372 grams of crack cocaine to an undercover detective.[2] The state appointed a series of attorneys to represent Davis in the matter. Davis refused to cooperate with any of his lawyers. He also threatened to harm at least one lawyer and warned an investigator from the public defender's office that he might harm her if she made him uncomfortable. Several of Davis's lawyers questioned whether Davis was competent to proceed because Davis would not respond to his lawyers' efforts to communicate with him and at times "exhibit[ed] [a] flat affect, bordering on catatonic."

¶ 4 The trial court ordered Davis to undergo a competency evaluation. One evaluation turned into three as Davis refused to cooperate with any of the evaluating doctors. The doctors reported Davis's history of mental illness and noted his silence and lack of expression. One evaluator surmised that Davis's behavior could be "symptomatic of paranoid schizophrenia or some other mental disease or defect." None of the doctors, however, deemed Davis incompetent. The trial court found Davis competent to stand trial based on these evaluations.

¶ 5 Prior to trial, Davis told the trial court that he wanted to represent himself. The trial court advised Davis pursuant to *People v. Arguello*, 772 P.2d 87 (Colo.1989). Davis told the trial court that he was taking Wellbutrin, an antidepressant, for his "bipolarism" and "mental condition as far as ... not trusting people." Davis also told the trial court that his mistrust of his lawyers resulted from paranoia that the Wellbutrin did not completely control.

¶ 6 After this colloquy, and upon hearing arguments that Davis should not be allowed to represent himself from both the prosecutor and defense counsel, the trial court found that Davis was unable to voluntarily, knowingly, and intelligently waive his right to counsel. Davis then filed several pro-se motions to dismiss his lawyer. During a hearing on the motions, the trial court again advised Davis pursuant to *Arguello*, heard arguments from the prosecutor and the defense attorney, and denied Davis's request to proceed pro se.

¶ 7 The trial court elaborated upon its oral denial of Davis's motions in a detailed written order. The order discussed the three competency evaluations, Davis's conduct in court, and Davis's interactions with his lawyers. Based on the totality of the circumstances, the trial court concluded:

> [Davis's] desire to represent himself is being driven, at least in part, by the same personality disorders that caused him to stare motionless at court appearances, to sit silently before examining psychiatrists, to refuse to cooperate with his own lawyers, and to refuse, until recently, to answer this Court's questions about his desire for self-representation. That is, I conclude that [Davis] has not voluntarily, knowingly and intelligently waived his right to counsel, but instead that his purported waiver is the product of his depression, antisocial personality features and perhaps other mental problems.

¶ 8 The case proceeded to trial with Davis represented by court-appointed counsel. The undercover officer who bought drugs from Davis testified that he "asked [Davis] for a 40. [Davis] then removed suspected crack cocaine from a baggie and then handed me an amount of crack cocaine." The prosecution relied on this testimony to argue that Davis should be convicted of possession and distribution of different quanta of drugs. A jury found Davis guilty of both possession and distribution of crack cocaine. The trial court sentenced Davis to the Department of Corrections for one year for the possession conviction and twelve years for the distribution conviction. Davis appealed both the trial court's denial of his request to represent

2. This case initially concerned three drug-related cases filed in Denver: 05CR1486, 05CR3846, and 06CR10189. We denied as improvidently granted the issue that arose out of the two 2005 cases: whether the defendant has a fundamental and personal constitutional right to seek to withdraw his guilty plea. As such, this opinion addresses only the two issues that arose out of 06CR10189. It therefore recites only the relevant facts of that case.

himself and his subsequent convictions to the court of appeals.

¶ 9 The court of appeals reversed the trial court's order denying Davis's request to represent himself. *People v. Davis*, 2012 COA 1, ¶¶ 57–59, ⸺ P.3d ⸺. Citing the United States Supreme Court's decision in *Edwards*, 554 U.S. at 171, 128 S.Ct. 2379, the court of appeals prescribed a new standard for evaluating a criminal defendant's competency to waive the right to counsel. *Davis*, ¶ 54. It then remanded the case to the trial court to analyze the pretrial record under the new standard. *Id.* at ¶ 60.

¶ 10 The court of appeals additionally upheld both of Davis's convictions. It reasoned that "the evidence was sufficient to support a finding that the possession and distribution charges were each based on a different quantum of drugs," and therefore, Davis's "conviction on both counts does not violate double jeopardy principles." *Id.* at ¶ 84. Writing in dissent, Judge Russel opined that "the evidence does not support a finding, beyond a reasonable doubt, that defendant possessed a share of drugs different from the one that he gave to the undercover officer." *Id.* at ¶ 104.

¶ 11 Both the People and Davis petitioned this court for certiorari review of the court of appeals' opinion. We granted certiorari to address both the *Edwards* question and the double jeopardy issue. We first examine whether to adopt a new competency standard for mentally ill defendants pursuant to *Edwards*.

## II. Colorado Law Does Not Require an *Edwards* Standard

 ¶ 12 The existing two-part, totality-of-the-circumstances analysis to determine whether a defendant has validly waived the right to counsel affords trial courts sufficient discretion to consider a defendant's mental illness. In doing so, this framework properly balances a defendant's Sixth Amendment right to self-representation with the right to a fair trial as contemplated by the United States Supreme Court in *Edwards*. We therefore need not adopt an additional standard for determining whether a defendant is competent to waive the right to counsel.

¶ 13 After providing the applicable standard of review, we describe how trial courts may consider a defendant's mental illness when applying the existing two-part framework for determining whether a defendant has validly waived the right to counsel. Then, we discuss why Colorado law does not require an additional competency standard for mentally ill defendants in light of *Edwards*.

### A. Standard of Review

 ¶ 14 We review questions of law, such as whether to adopt a new standard under *Edwards*, de novo. *See Lucero v. People*, 2012 CO 7, ¶ 19, 272 P.3d 1063, 1065.

### B. Waiver of the Right to Counsel

 ¶ 15 A criminal defendant has a constitutional right to represent himself. U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *Faretta v. California*, 422 U.S. 806, 818–19, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (holding that the Sixth and Fourteenth Amendments imply the right to self-representation). A defendant must validly waive his constitutional right to counsel to exercise the right to self-representation. *See Arguello*, 772 P.2d at 93. Under existing law, a defendant validly waives the right to counsel if he (1) is competent to waive the right, and (2) makes the waiver voluntarily, knowingly, and intelligently. *See id.; see also Godinez v. Moran*, 509 U.S. 389, 400–01, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).

 ¶ 16 A defendant is competent to waive the right to counsel if he meets the threshold standard for competence to stand trial articulated by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam). *Godinez*, 509 U.S. at 398, 113 S.Ct. 2680 (applying the *Dusky* standard to determine the defendant's competence to waive the right to counsel). Specifically, a defendant is competent to waive the right to counsel if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding[ ] and ... has a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. at 402, 80 S.Ct. 788.

¶ 17 If a trial court finds that a defendant fails to meet this standard, then the defendant may not waive the right to counsel. *See Godinez,* 509 U.S. at 399, 113 S.Ct. 2680. If the defendant satisfies the *Dusky* competency standard, however, he may waive the right to counsel if his waiver is voluntary, knowing, and intelligent. *Arguello,* 772 P.2d at 94; *see also Faretta,* 422 U.S. at 807, 95 S.Ct. 2525 (holding that one must voluntarily and intelligently waive the right to counsel).

¶ 18 A "voluntary" waiver, like any voluntary statement, is one that "was not extracted by threats or violence, promises, or undue influence." *People v. Smith,* 716 P.2d 1115, 1118 (Colo.1986) (defining "voluntary statement" in the context of admissibility). Trial courts evaluate whether a defendant's waiver is voluntary "on the basis of the totality of the circumstances under which it is given." *People v. Raffaelli,* 647 P.2d 230, 235 (Colo.1982). A defendant's mental illness "is one factor to be considered in determining whether the statement was voluntary," *Smith,* 716 P.2d at 1118 (citing *Raffaelli,* 647 P.2d at 235), because mental illness could impact whether the defendant's statement arose due to threats, promises, or undue influence.

¶ 19 If the trial court finds that the defendant has made a voluntary waiver, it must also determine whether the waiver was knowing and intelligent. *Arguello,* 772 P.2d at 94. A waiver is knowing and intelligent when the totality of the circumstances demonstrates that the defendant "understands the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter." *Id.*

¶ 20 Even if the defendant is found competent, his mental illness can impact whether he makes a knowing and intelligent waiver because the illness might prevent him from broadly understanding the charges, punishments, defenses, and other essential facts of the case. As such, the trial court may consider the defendant's mental illness during its totality-of-the-circumstances analysis to determine whether the waiver was knowing and intelligent. *See id.* at 96 (implying that trial courts may consider a competent defendant's mental illness when assessing the validity of the waiver of the right to counsel); *see also Maynard v. Boone,* 468 F.3d 665, 677 (10th Cir.2006) (considering defendant's mental condition in determining whether waiver of counsel was knowing and intelligent in a federal habeas corpus case).

¶ 21 If the trial court finds that a competent defendant has made a voluntary, knowing, and intelligent waiver of his right to counsel, then the waiver is valid and the trial court will allow the defendant to proceed pro se. If, on the other hand, the trial court finds that the totality of the circumstances shows the competent defendant has not voluntarily, knowingly, and intelligently waived the right, then the trial court will "insist upon representation by counsel." *Edwards,* 554 U.S. at 178, 128 S.Ct. 2379.

### C. Colorado Law Does Not Require an *Edwards* Standard

¶ 22 As described above, Colorado's totality-of-the-circumstances analysis for a valid waiver of the right to counsel affords trial courts sufficient discretion to consider a defendant's mental illness. This framework protects defendants' Sixth Amendment right to self-representation and the right to a fair trial. Accordingly, Colorado law already provides what the Supreme Court sought in *Edwards:* an analytical scheme that appropriately considers whether mental illness should prevent the defendant from representing himself at trial. *See id.* at 177–78, 128 S.Ct. 2379 ("[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities ... [and] insist upon representation by counsel for those competent enough to stand trial under *Dusky* but who still suffer from severe mental illness" such that they cannot represent themselves.).

¶ 23 In *Edwards,* the Court considered the constitutional implications of requiring trial representation for a defendant who was competent under *Dusky,* but whose mental illness called into question whether the defen-

dant could represent himself at trial. *See id.* at 174–78, 128 S.Ct. 2379. The Court held that the Constitution "permits a State to limit [the] defendant's self-representation right by insisting upon representation by counsel at trial[ ] on the ground that the defendant lacks the mental capacity to conduct his trial defense unless represented." *Id.* at 174, 128 S.Ct. 2379.

¶ 24 In so holding, the Court recognized the complexities of addressing mental illness, reasoning that "the trial judge . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." *Id.* at 177, 128 S.Ct. 2379. Although it "caution[ed] against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself," *id.* at 175, 128 S.Ct. 2379, the Court did not prescribe an additional competency standard, nor did it require states to adopt their own. *See id.* at 178, 128 S.Ct. 2379; *see also United States v. DeShazer*, 554 F.3d 1281, 1290 (10th Cir.2009) ("[T]he *Edwards* Court held only that the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they" cannot navigate trial proceedings by themselves. (omission in original) (internal quotation marks omitted)). *Edwards* therefore stands for the proposition that a trial court may, based on the totality of the circumstances of a particular case, determine that mental illness prevents a defendant from validly waiving the right to counsel even if the defendant is competent under *Dusky*.

¶ 25 Colorado's existing analytical framework provides the standards necessary for trial courts to exercise the discretion described in *Edwards*. The framework's two-part structure allows trial courts to first consider a defendant's mental illness when assessing the defendant's competence to waive the right to counsel under *Dusky*. It then allows mental illness to factor into the trial court's calculus again when considering whether the defendant's waiver of the right to counsel is voluntary, knowing, and intelligent. As such, existing law accomplishes the *Edwards* Court's objective for trial courts to consider more than just *Dusky* when analyzing a mentally ill defendant's waiver of the right to counsel. *See Edwards*, 554 U.S. at 175, 128 S.Ct. 2379.

¶ 26 The two-part waiver analysis also adequately balances the need to protect the Sixth Amendment right to self-representation with the due process and fairness concerns that can arise when a mentally ill defendant chooses to proceed pro se. The first piece of the framework affords defendants ample opportunity to waive the right to counsel under the Sixth Amendment because the minimal *Dusky* standard requires only a low-level, rational understanding of the proceedings to show the defendant's competence to waive. So long as a minimally competent defendant then provides a voluntary, knowing, and intelligent waiver of the right to counsel pursuant to *Arguello*, that defendant may proceed without counsel at trial per the Sixth Amendment.

¶ 27 In addition, the second prong of the valid waiver analysis protects the defendant's right to a fair trial by affording trial courts discretion to consider a competent defendant's mental illness when analyzing whether the defendant's waiver was voluntary, knowing, and intelligent. In recognizing the right to self-representation, the Supreme Court also recognized that this right "is not absolute." *Id.* at 171, 128 S.Ct. 2379. Not only can allowing certain mentally ill defendants to represent themselves create a "spectacle" that could prove "humiliating," but such a practice could "undercut[ ] the most basic of the Constitution's criminal law objectives, providing a fair trial." *Id.* at 176–77, 128 S.Ct. 2379. By giving trial courts discretion to consider the defendant's mental illness when assessing whether the defendant offers a voluntary, knowing, and intelligent waiver, Colorado law equips trial courts to protect the right to a fair trial when a competent defendant's waiver does not satisfy *Arguello*. Thus, existing law strikes the appropriate balance between honoring the defendant's Sixth Amendment rights and protecting the

basic fairness due process requires. We see no need to add another layer of analysis to this framework.

¶ 28 We therefore reverse the court of appeals' holding that trial courts should consider whether a defendant is "unable to carry out the basic tasks needed to present his defense in counsel's absence" before deciding whether the defendant may waive his right to counsel. *Davis*, ¶ 54. We also reverse the court of appeals' decision to remand this case to the trial court to apply that unnecessary standard because the trial court properly applied existing law. *See id.* at ¶ 61.

¶ 29 We now turn to the unrelated issue of whether double jeopardy and merger principles require the trial court to vacate Davis's possession conviction.

### III. Possession Merges into Distribution When Both Convictions Arise from the Same Quantum of Drugs

¶ 30 We hold that double jeopardy and merger principles require the trial court to vacate Davis's possession conviction because the evidence at trial did not support a finding, beyond a reasonable doubt, that Davis possessed a quantum of drugs different from the one he gave the undercover officer. Accordingly, we reverse the court of appeals' holding that "the evidence was sufficient to support a finding that the possession and distribution charges were each based on a different quantum of drugs" and therefore did "not violate double jeopardy principles." *Id.* at ¶ 84.

¶ 31 After providing the standard of review, we summarize the double jeopardy, merger, and sufficiency-of-the-evidence tenets that control our holding. We then apply those principles to the record in this case.

### A. Standard of Review

■■ ¶ 32 Appellate courts review errors that were not preserved by objection under a plain error standard. *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120. Plain error is "obvious and substantial," *id.* and must have "so undermined the fundamental fairness of the [proceeding] so as to cast serious doubt on the reliability of the judgment" to merit reversal, *People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

¶ 33 We apply the plain error standard in this instance because defense counsel did not object to the trial court's failure to merge Davis's possession and distribution convictions at sentencing.

### B. Double Jeopardy and Merger

■■■ ¶ 34 The double jeopardy clauses of the United States and Colorado Constitutions prohibit multiple punishments for the same offense. U.S. Const. amends. V, XIV; Colo. Const. art. II, § 18; *Patton v. People*, 35 P.3d 124, 128–29 (Colo.2001). Although the legislature may define multiple offenses and authorize multiple punishments based on the same behavior, *People v. Leske*, 957 P.2d 1030, 1035 (Colo.1998), a defendant may not be punished multiple times for the same conduct if "[o]ne offense is included in the other," § 18–1–408(1)(a), C.R.S. (2014). One offense is included in another if "proof of the same or less than all the facts required to establish the commission of the [greater]" offense establishes the lesser offense. *Abiodun*, 111 P.3d at 465 (citing § 18–1–408(5)(a)); *see Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■■ ¶ 35 Possession of a controlled substance under section 18–18–405, C.R.S. (2014), is a lesser included offense of distribution under that section when the possession and distribution charges arise out of actions involving a single "discrete quantum of drugs." *See Abiodun*, 111 P.3d at 471.[3] As such, convicting a defendant of possession

---

**3.** At the time the People charged Davis with possession and distribution in 2005, each charge represented a "stage[ ] in the commission of one crime" delineated in section 18–18–405(1). *Abiodun*, 111 P.3d at 468; *see* § 18–18–405(1), C.R.S. (2005). Although the legislature subsequently removed possession without intent to distribute from section 18–18–405(1), simple posses- sion of a discrete quantum of drugs remains a lesser included offense of distribution of that same quantum of drugs because the same or less than all of the facts required to establish distribu- tion under revised section 18–18–405(1) establish possession under section 18–18–403.5(1), C.R.S. (2014).

and distribution of the same quantum of drugs violates the constitutional prohibition on double jeopardy. *See id.; see also* § 18–1–408(1)(a). When a jury convicts a defendant for both possession and distribution of the same quantum of drugs, then, the trial court should merge the possession conviction into the distribution conviction for sentencing. *See Abiodun*, 111 P.3d at 471.

¶ 36 Therefore, whether *Abiodun* required Davis's possession conviction to merge into his distribution conviction at sentencing hinges on whether the prosecution provided sufficient evidence to show the existence of more than one quantum of drugs. We turn now to the record to answer this sufficiency-of-the-evidence question.

## C. Sufficiency of the Evidence

¶ 37 The evidence provided by the prosecution failed to sufficiently show that Davis possessed and distributed more than one quantum of drugs. To "assess the sufficiency of the evidence," we consider "whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding ... beyond a reasonable doubt." *People v. Dunaway*, 88 P.3d 619, 625 (Colo.2004).

¶ 38 Here, the only evidence offered by the prosecution that could have supported the theory that Davis's possession conviction related to a different quantum of drugs than that quantum underlying his distribution conviction was the following trial testimony from the undercover officer: "I asked [Davis] for a 40. He then removed suspected crack cocaine from a baggie and then handed me an amount of crack cocaine."

¶ 39 The court of appeals majority reasoned that "[t]he jury could reasonably have inferred from this testimony that defendant handed the officer only some of the drugs that were in the baggie and kept the rest in his possession." *Davis*, ¶ 83. The court of appeals then concluded that this evidence "was sufficient to support a finding that the possession and distribution charges were each based on a different quantum of drugs." *Id.* at ¶ 84. Writing in dissent, Judge Russel disagreed with the majority's sufficiency de-

termination. *See id.* at ¶ 104. In his view, "the evidence does not support a finding, beyond a reasonable doubt, that defendant possessed a share of drugs different from the one that he gave to the undercover officer." *Id.* We agree with Judge Russel.

¶ 40 Although a reasonable trier of fact *might* have inferred from the undercover officer's testimony that Davis possessed and distributed different quanta of drugs, the minimal evidence provided by the prosecution on the "quantum of drugs" question does not establish such an inference beyond a reasonable doubt. The paltry evidence supporting a "multiple quanta of drugs" theory is therefore insufficient to prove that Davis possessed and distributed different quantities of crack cocaine. Accordingly, the double jeopardy and merger principles delineated in *Abiodun* apply in this case.

¶ 41 Because *Abiodun* applies here, the trial court obviously and substantially violated Davis's right to avoid double jeopardy in a way that so undermined the fundamental fairness of the sentencing proceeding as to cast serious doubt on the reliability of the trial court's decision to sentence Davis to one year in prison for possession. *See Miller*, 113 P.3d at 750. The trial court therefore plainly erred when it failed to merge the possession conviction into the distribution conviction. Accordingly, we reverse the court of appeals' affirmation of the trial court's error and remand to the court of appeals with instructions to remand to the trial court to vacate Davis's conviction and sentence for possession.

## IV. Conclusion

¶ 42 We decline to adopt a new competency standard for mentally ill defendants pursuant to *Edwards* because our existing two-part framework for determining whether a defendant has validly waived the right to counsel affords trial courts sufficient discretion to consider a defendant's mental illness. As such, we reverse the court of appeals' decision to create a new standard in light of *Edwards*.

¶ 43 We also reverse the judgment of the court of appeals on the double jeopardy ques-

tion because the evidence did not show the existence of more than one quantum of drugs beyond a reasonable doubt.