The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 5, 2020

## 2020COA37

**No. 18CA1308, *People v. Lavadie* — Constitutional Law — Sixth
Amendment — Right to Self-Representation**

Defendant contends that the trial court violated his

constitutional right to represent himself when it forced him to

proceed to trial with appointed counsel over his numerous

objections.  When defendant first requested to represent himself,

the trial court attempted to give the advisement required by *People

v. Arguello*, 772 P.2d 87, 94-95 (Colo. 1989).  But defendant's

unresponsive answers to the court's questions during that

advisement made it difficult, if not impossible, for the court to

ascertain whether his waiver of his right to counsel was knowing

and intelligent.  So, the court appointed counsel and refused to

entertain defendant's subsequent requests to represent himself.

Defendant contends that was error.

A division of the court of appeals, addressing an issue of first impression in Colorado, lays out what a trial court should do when a defendant, through his conduct, frustrates a trial court's efforts to properly advise him of his constitutional rights before being allowed to proceed pro se. The division holds that, before a trial court can conclude a defendant will not be permitted to represent himself based on failure to cooperate with an *Arguello* advisement, it must advise the defendant that the possible consequences of refusing to answer the court's questions, offering nonsensical responses to those questions, or generally refusing to acknowledge the court's jurisdiction will be a denial of his request to represent himself, the appointment of counsel against his wishes, and a barrier to the court entertaining a subsequent request to represent himself.

Applying that holding to this case, the division concludes that, because the trial court terminated the advisement, appointed counsel over his continuing objection, and refused to entertain a subsequent request to proceed pro se without such a warning, the trial court violated his right to self-representation. Therefore, the division reverses the convictions and remands the case for a new trial.

COLORADO COURT OF APPEALS                                     **2020COA37**

Court of Appeals No. 18CA1308
Mesa County District Court No. 17CR828
Honorable Lance P. Timbreza, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Paul Alex Lavadie,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE WELLING
Furman and Pawar, JJ., concur

Announced March 5, 2020

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jud Lohnes, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    A jury found defendant, Paul Alex Lavadie, guilty of felony menacing with a real or simulated weapon, aggravated robbery as a crime of violence, and misdemeanor theft.  He now appeals those convictions, contending that the trial court violated his constitutional right to represent himself when it forced him to proceed to trial with appointed alternate defense counsel (ADC) over his numerous objections.

¶ 2    While it may not be uncommon that a defendant who insists on self-representation also poses communication challenges, we have found no Colorado cases directly addressing what a trial court should do when a defendant, through his conduct, frustrates a trial court's efforts to properly advise him of his constitutional rights before being allowed to proceed pro se.  Addressing this issue of first impression, we recognize that such a situation places the trial court in an unenviable predicament because either depriving a defendant of his constitutional right to represent himself or allowing him to represent himself without a valid waiver of his right to counsel results in structural error requiring reversal.  While we are sympathetic to the court's plight in dealing with a difficult defendant, we now hold that, before denying uncooperative or

obstreperous defendants the right to represent themselves, the trial court must advise them that their continued failure to appropriately answer the court's questions will result in the court finding that the waiver of their right to counsel is unknowing and unintelligent, appointing an attorney to represent them against their wishes, and potentially declining to entertain a subsequent request to proceed without counsel. Applying that holding to this case, we conclude that, because the trial court without giving such a warning terminated the advisement, appointed counsel over his continuing objection, and refused to consider his subsequent requests to proceed pro se, the trial court violated Lavadie's right to self-representation. Therefore, we reverse his convictions and remand the case for a new trial.

## I.    Background

¶ 3    Stemming from an incident during which Lavadie took a cell phone from one of the victims while holding an open pocket knife and a rock, he was charged by information with the following felonies: (1) aggravated robbery; (2) two counts of menacing; and (3) theft from a person, in violation of section 18-4-401(5), C.R.S. 2019.

¶ 4    At his first court appearance after his arrest, Lavadie rejected the trial court's offer to appoint an attorney to represent him. And, at the beginning of the preliminary hearing roughly two weeks later, the trial court asked Lavadie if he wanted an attorney to represent him. Lavadie responded, "I wish not to enter into the corporation by any means."

¶ 5    The court then attempted to conduct an advisement pursuant to *People v. Arguello*, 772 P.2d 87, 94-95 (Colo. 1989), and the following exchange occurred:

> [COURT]: Mr. Lavadie, I do need to have a discussion with you about your decision to represent yourself and so I have some questions for you. First of all, do you understand that you have the right to be represented by an attorney?
>
> [LAVADIE]: No, I do not understand anything.
>
> [COURT]: All right. Do you understand that if you cannot afford an attorney, one will be appointed to represent you at no cost to you?
>
> [LAVADIE]: I would not like to enter into the corporation.
>
> [COURT]: All right.
>
> [LAVADIE]: For any reason.

3

[COURT]:  Do you understand I will appoint an attorney if you want an attorney to represent you?

[LAVADIE]:  I, I, [Judge], I don't mean an- -, any disrespect.  I wish not to participate with the established corporation that is a half-truth, which makes it a whole lie.

[COURT]:  All right, and that's an important answer to that question.  And so I understand you don't want to participate, but I have to ask you these questions, and once I have answers to these, we can be done with this.  Do you understand that, Mr. Lavadie?

[LAVADIE]:  Yes, sir.

[COURT]:  All right. Do you understand that there are charges against you that carry the . . . penalties that we've discussed previously?  Those include robbery, menacing, two counts of menacing, and theft from a person?

[LAVADIE]:  First of all, Your Honor, I have not been given a discovery, okay, and that's my, my right, okay.

[COURT]:  And we can have a discussion about discovery in just a minute.  I just want to -

[LAVADIE]:  Okay.

. . . .

[COURT]:  Okay.  And do you understand the potential penalties that you can face for those counts include a sentence of 2 to 6 years in the Department of Corrections, up to 12 years

4

in the aggravated range, 3 years of parole, a fine of [$]2,000 to $500,000.00?

[LAVADIE]: That's all corporation. I do not do corporation.

[COURT]: Okay. And do you, Mr. Lavadie, tell me about, you just cited some law to me which was, it's a, some law on point. Do you have any legal training?

[LAVADIE]: I've been doing this for a little while, Your Honor, and I wish not to do it any longer, or, [Judge]. I –

[COURT]: And when you say this, what is this?

[LAVADIE]: I've been brought before the judgment seat of man pretty much all my life since I was 14 years old. I'm now 47. I have a lot of experience of the persuasive words and the flattery speech that is meant to beguile the minds of the innocent, and I wish not to participate with it anymore.

. . . .

[COURT]: Did you graduate high school?

[LAVADIE]: No, I was dismissed.

. . . .

[COURT]: Okay. How long ago was that? Do you recall that?

[LAVADIE]: I don't.

[COURT]: Okay. Are you under the influence of any drugs, medications, alcohol, anything

5

impacting your ability to understand what we're doing here today?

[LAVADIE]:  No, [Judge].

[COURT]:  Do you understand that criminal law is a complicated area and that an attorney trained in the field could be a great help in preparing and representing your defense?

[LAVADIE]:  You, you're trying, I, I wish not to enter into any part of the corporation whatsoever.

. . . .

[COURT]:  All right, let, let me ask you this, Mr. Lavadie.  Do you understand that even if you don't want an attorney to represent you, I can appoint advisory counsel to help you, and they could help you do such things as get discovery- -

[LAVADIE]: - Excuse me, [Judge].  This lawyering craft that was created only to represent the corporation, which does not have my best interest at hand, I wish not to participate with, so I would ask you, [Judge], to please, please don't offer me this no more.

. . . .

[COURT]:  - so, you, let me just ask you so we can complete this, this advisement.  Do you wish to have an attorney?

[LAVADIE]:  I wish not to at all enter into the corporation.

¶ 6     After that discussion, the trial court made the following

findings:

> [B]ased upon the record and the advisement given pursuant to *Arguello*, the Court finds, based upon information provided by the Defendant, he did come in and at least provided the Court with a cite to authority that was relevant and applicable, so he does have at least a minimal understanding of the law, however, he indicates that he's not participating in the proceeding and he questions the authority and jurisdiction of the Court, he indicates he doesn't wish to participate, he hasn't demonstrated that he can sufficiently answer any of the requirements for the Court to make a finding pursuant to *Arguello* that he is competent to represent himself, and for those reasons, the Court will appoint a public defender to represent Mr. Lavadie.

¶ 7     When the court said that it would continue the preliminary

hearing because Lavadie would require the representation of an

attorney, Lavadie interjected, "Did I do something wrong[?]"  The

court did not acknowledge that remark, and went on to discuss

with the prosecutor a new date for the preliminary hearing.

¶ 8     At the next court date, while represented by appointed

counsel, Lavadie was held in contempt for not sitting down and was

removed from the courtroom.  His counsel told the court that

Lavadie did not want to be represented by him and that he believed that presented a conflict of interest.

¶ 9     At the next hearing, Lavadie appeared with his newly appointed ADC because the public defender had withdrawn, but Lavadie insisted from the outset that the ADC was not his attorney. The ADC then addressed the court telling it that Lavadie had told him

> to ask the Court to dismiss [him] from the case as his representation.  He wants to be self represented in his -- in this case.  He's made it pretty clear to me that he wants to represent himself.  That he has some different ideas than I do as far as the case goes.  He talks about if he has me representing him then he'll become . . . part of the corporation and end up giving up his liberty and freedom to represent himself in this case.

¶ 10    After discussions with the ADC and prosecutor regarding the requirements for a knowing and intelligent waiver of the right to counsel, the court said:

> Well for the purpose of both *People [v.] Davis* and *Arguello*, I believe the Court does have to find that based upon the totality of the circumstances there's a demonstration of a knowing and intelligent waiver of the right to be represented by an attorney.  Thus indicating also that one is able and knowing,

8

voluntary and intelligent way to exercise the right to self-representation.

That requires the understanding of the nature of the charges, the statutory offenses included with them, the range of liable punishments they're under, possible defenses to the charges, circumstances and mitigation thereof and all the other facts essential to a broad understanding of the whole matter.

Part of that is an understanding of the jurisdiction of this Court, the applicable validity of the rules of law that govern the proceedings in this matter as well as the substantive both procedural and substantive law that governs the case and that's what the Defendant is lacking in terms of being able to knowingly and intelligently represent himself in this case.

And so the Court previously made those findings on the record and I find nothing new today to indicate that anything has changed with regard to the ability -- the ability of the Defendant to represent himself.

And so the Court can't -- doesn't make any change in the *Arguello* determination it previously made when it appointed [ADC] as Counsel.

¶ 11    At two of the subsequent hearings, and again on the first day of the trial, Lavadie persisted in his desire to represent himself. The court, however, did not readdress the issue; Lavadie was ultimately represented throughout his trial by ADC.

¶ 12    Although the court entered a judgment of acquittal on the felony theft from a person count, the jury found Lavadie guilty of aggravated robbery, felony menacing counts, and misdemeanor theft.

## II.    Trial Court Improperly Denied Defendant His Sixth Amendment Right to Self-Representation

¶ 13    Lavadie contends that the trial court violated his Sixth Amendment right to self-representation when it forced him to be represented by counsel despite his repeated and unequivocal requests to represent himself.  We agree.

### A.    Standard of Review

¶ 14    Whether a trial court properly denied a defendant's right to self-representation poses a question of law we review de novo. *People v. Abdu*, 215 P.3d 1265, 1267 (Colo. App. 2009).  If we conclude that a trial court denied a defendant's right to self-representation, structural error results, and we must reverse. *See People v. Waller*, 2016 COA 115, ¶ 23 (stating that structural error, and not harmless error analysis, applies to the denial of the right to self-representation).

10

## B. Constitutional Right to Self-Representation

¶ 15    The Sixth Amendment to the United States Constitution, as well as the Colorado Constitution guarantee the right of a criminal defendant to represent himself at trial.  *See Faretta v. California*, 422 U.S. 806, 818 (1975) ("The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense."); *see also* Colo. Const. art. II, § 16 ("[T]he accused shall have the right to appear and defend in person.").

¶ 16    "The right of self-representation . . . is personal to the defendant and may not be abridged by compelling a defendant to accept a lawyer when he desires to represent himself." *People v. Romero*, 694 P.2d 1256, 1264 (Colo. 1985); *see also People v. Johnson*, 2015 COA 54, ¶ 16.

¶ 17    Because waiving the right to counsel and opting to proceed pro se implicates constitutional rights, the trial court must ensure that the defendant has knowingly, intelligently, and voluntarily relinquished the right to counsel in favor of proceeding pro se.  *See Arguello*, 772 P.2d at 93.  Indeed, "a trial court's ability to force

11

counsel upon an unwilling defendant is limited." *Reliford v. People*, 195 Colo. 549, 552, 579 P.2d 1145, 1147 (1978).

¶ 18      When a defendant asserts a violation of his right to self-representation, appellate courts generally consider whether the trial court appointed counsel despite the defendant's unequivocal waiver of his right to counsel. *See People v. West*, 2019 COA 131, ¶¶ 18-19.  Even if a defendant properly invokes the right to self-representation, however, the defendant must still show that he "knowingly and intelligently" relinquishes the benefits of representation by counsel. *Faretta*, 422 U.S. at 835; *Arguello*, 772 P.2d at 93; *see also Ronquillo v. People*, 2017 CO 99, ¶ 32.

¶ 19      "The trial court should conduct a thorough and comprehensive inquiry on the record to determine whether the defendant is aware of the nature of the charges, the range of allowable punishments, possible defenses, and the risks of proceeding pro se." *Johnson*, ¶ 17 (citing *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991)).

¶ 20      While the Supreme Court "has not 'prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel[,]' . . . '[t]he information a defendant must possess

12

in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding." *United States v. Hansen*, 929 F.3d 1238, 1251 (10th Cir. 2019) (quoting *Iowa v. Tovar*, 541 U.S. 77, 88 (2004)); *see also Arguello*, 772 P.2d at 95 (the validity of the waiver must be determined on the basis of the particular facts and circumstances of each case, including the background, experience, and conduct of the defendant).

### C.    Analysis

¶ 21    Here, the record reveals that, throughout the proceedings, Lavadie consistently indicated that he did not want an attorney and wanted to represent himself.  He never wavered from that position. Thus, the trial court properly attempted to ascertain whether his waiver of his right to counsel was knowing and intelligent by trying to conduct an *Arguello* advisement.

¶ 22    Throughout that advisement, however, Lavadie repeatedly gave unresponsive answers to the court's questions, insisting that he "did not do corporation" or "did not want to enter into the corporation," thereby conveying his refusal to participate in the

13

proceeding. Faced with Lavadie's unresponsiveness, the trial court

told him, "I understand you don't want to participate, but I have to

ask you these questions, and once I have answers to these, we can

be done with this. Do you understand that, Mr. Lavadie?" But,

despite affirmatively indicating that he understood, Lavadie's

remaining answers to the court did not convey that he understood

the right he was waiving. The trial court ended the advisement

finding that it could not conclude he was "competent to represent

himself,"[1] and appointed a public defender to represent him.

---

[1] Although the trial court used the word "competent" in its findings, this case is not about Lavadie's competence to stand trial. True, there is a close correlation between a defendant's competence to stand trial and his or her competence to waive the right to counsel. *See, e.g.*, *United States v. Herrera-Martinez*, 985 F.2d 298, 302 (6th Cir. 1993) ("[T]he fact that the district court found that Appellant was competent to stand trial is not conclusive as to whether she was competent to waive her right to counsel."); *United States v. McDowell*, 814 F.2d 245, 250 (6th Cir. 1987) (recognizing "that the degree of competency required to waive counsel is 'vaguely higher' than the competency required to stand trial"), *abrogated by Godinez v. Moran*, 509 U.S. 389 (1993); *People v. Davis*, 2015 CO 36M, ¶¶ 16-17 (discussing the relationship between competence to stand trial and competence to waive counsel); *People v. Rawson*, 97 P.3d 315, 322 (Colo. App. 2004) (holding that a finding that defendant is competent to stand trial "is not a substitute for the level of inquiry and degree of competence necessary for a valid waiver of counsel"). But Lavadie did not contend in the trial court, and does not contends on appeal, that he was not competent to stand trial or that the court erred by failing to explore the issue further than it

14

¶ 23    We begin by noting that "[t]he right of self-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 834 n.46. And, a trial court faced with an obstreperous, uncooperative, or recalcitrant defendant may terminate self-representation if he deliberately engages in such behavior. *See id.* The same holds true for invoking the right in the first instance.

¶ 24    The Supreme Court has also recognized that an "obstreperous defendant" could be removed from the courtroom "until he promises to conduct himself properly." *Illinois v. Allen*, 397 U.S. 337, 343-44 (1970). It follows then, that a defendant who behaves in such a manner waives his right to proceed pro se, and the court can appoint counsel to act in his stead while he is removed from the courtroom. *See Faretta*, 422 U.S. at 834 n.46. The refusal to provide answers to questions during an advisement is similar to a refusal to attend proceedings, and the court may treat it as a waiver of the right to self-representation. *United States v. Pryor*, 842 F.3d 441, 450 (6th Cir. 2016).

---

did. Thus, in this opinion we are neither analyzing the relationship between competency to stand trial and competence to waive the right to counsel nor whether or when a defendant may satisfy the former but not the latter.

15

¶ 25 However, as recognized in Justice Brennan's concurrence in *Allen*, 397 U.S. at 350, "no action against an unruly defendant is permissible except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior." That is what was lacking here.

¶ 26 While *Allen* involved a defendant who was removed from the courtroom during his trial because he engaged in disorderly and disruptive speech and conduct such that it was difficult or nearly impossible to conduct the trial, *see id.* at 338 (majority opinion), we conclude that the requirement that a defendant be fully and fairly informed that his continued uncooperative conduct will have possible consequences applies equally to an advisement regarding a defendant's waiver of his right to counsel where the defendant provides non-responsive answers or otherwise refuses to acknowledge the trial court's jurisdiction. *Cf. Pryor*, 842 F.3d at 450 (holding that because the magistrate expressly warned the defendant that his failure to answer the questions posed by the court during the *Faretta* advisement would result in counsel being appointed for him, the court did not violate the defendant's

constitutional right to self-representation when it appointed counsel

for him after he continued to provide non-responsive answers).

¶ 27     Indeed, we find the Sixth Circuit Court of Appeals' analysis in

*Pryor* instructive.  There, in the trial court proceedings, the

magistrate judge, after attempting "to have the [defendant]

expressly state he wished to represent himself, clearly warned [him]

that failure to respond to the question would result in the

appointment of . . . [an] attorney." *Id.* at 450.  The Sixth Circuit, in

deciding that the appointment of counsel against the defendant's

will in that case did not violate his constitutional right to

self-representation, explained that

> [c]ourts dealing with defendants seeking to
> represent themselves face a dilemma: the
> potential for an unconstitutional denial of the
> right to counsel if the right to
> self-representation is too quickly provided or
> reversal for unconstitutional denial of the right
> to self-representation if the right to counsel is
> too vigorously shielded.  The method that our
> court has devised to avoid the predicament is
> to provide an opportunity for defendants to
> indicate their desire to waive the right to
> counsel and then to undertake a thorough
> review of the detriments and disadvantages
> that accompany such a waiver.  Where the
> defendant through his own actions does not
> permit the court to ascertain whether a waiver
> is knowing or voluntary, or even if he means to

17

> waive at all, he cannot use the court's failure to acknowledge the waiver later to take a mulligan and try his case again if he loses. This is not to say that an obstreperous defendant has forever waived his right to self-representation; on the contrary, where "he promises to conduct himself properly," the court should reinvestigate the invocation.

*Id.* at 451 (quoting *Allen*, 397 U.S. at 344).

¶ 28    Here, like the defendant in *Pryor*, Lavadie's behavior made it difficult, if not impossible, for the court to ascertain whether his waiver of his right to counsel was knowing and intelligent. Indeed, the trial court here did a yeoman's job of endeavoring to have Lavadie demonstrate that his waiver was knowing and intelligent while maintaining admirable control. However, unlike the magistrate judge in *Pryor*, the trial court here did not expressly tell Lavadie that his failure to provide responsive answers to the questions would result in an attorney being appointed to represent him. *Cf. Arguello*, 772 P.2d at 97 ("[B]efore a reviewing court can find a valid implied waiver based on conduct, there must be ample, unequivocal evidence in the record that the defendant was advised properly in advance of the consequences of his actions."). We find that distinction dispositive.

18

¶ 29    Even though the trial court told Lavadie that it needed to finish the *Arguello* questions in order to move on, it is clear that Lavadie was unaware that his failure to answer the questions would result in an attorney being appointed for him against his wishes. Importantly, when the court continued the hearing to appoint counsel, Lavadie asked, "[d]id I do something wrong?" The court should have answered that question with "yes," followed by an explanation that his refusal to give appropriate answers to the advisement questions would result in the court denying his request to represent himself, appointing counsel for him, and refusing to entertain a future request to proceed pro se.

¶ 30    We acknowledge the difficulty trial courts face in dealing with such defendants; still, we hold that, before a trial court can conclude a defendant will not be permitted to represent himself based on obstreperous or uncooperative conduct, it must advise the defendant that one possible consequence of refusing to answer the court's questions, offering nonsensical responses to those questions, or generally refusing to acknowledge the court's jurisdiction will be a denial of his request to represent himself, the appointment of counsel against his wishes, and a barrier to the

19

court entertaining a subsequent request to represent himself. *Id.* (noting the importance of "adequately explaining to [the defendant] the potential consequences of his behavior" before imposing a forfeiture of a right based on such behavior). But even when such an advisement is given, the court should still reinvestigate its decision to appoint counsel for a defendant against his wishes if, at a subsequent hearing, the defendant indicates that he is willing to engage in an appropriate dialogue with the court and properly conduct himself. *Pryor*, 842 F.3d at 451.

¶ 31    Applying that rule to this case, we conclude that the trial court violated Lavadie's constitutional right to represent himself because it (1) failed to expressly warn him before terminating the advisement and appointing counsel that his continued refusal to answer the court's questions would result in the court appointing counsel for him and declining to entertain a subsequent request to represent himself; and (2) did not allow Lavadie an opportunity to indicate he would engage in an appropriate dialogue with the court when Lavadie reasserted at subsequent hearings that he wanted to represent himself. *See Allen*, 397 U.S. at 344, 350; *Pryor*, 842 F.3d at 450-51.

20

¶ 32     Accordingly, because a violation of the right of self-representation constitutes structural error, Lavadie's convictions must be reversed and the case remanded for a new trial. *See Waller*, ¶ 23.

### III.    Remand Proceedings

¶ 33     We note that Lavadie was tried on one count of aggravated robbery, a class four felony; two counts of menacing, both class five felonies; and one count of theft from a person, a class five felony. At the conclusion of the prosecution's case, Lavadie, through counsel, sought a judgment of acquittal on the theft from a person count, section 18-4-401(5), because elements of that crime include the victim being unaware of the theft and that the theft was not accomplished through force, threats, or intimidation, and because the evidence at trial did not support such a charge.  The trial court agreed and granted Lavadie's motion for judgment of acquittal on that count.  *See People v. Delgado*, 2019 CO 82, ¶ 2 (holding that because convictions on both theft from a person and robbery are mutually exclusive, a defendant cannot be convicted of both).

¶ 34     In response, the prosecution requested that the jury be instructed on misdemeanor theft under section 18-4-401(1) and

(2)(d), where the misdemeanor classification is based on the value of the item taken.  Because the information charging Lavadie referenced both subsections (1) and (5) of the theft statute, the court granted the prosecution's request.  And, as relevant here, the jury returned a guilty verdict on the misdemeanor theft count, finding that the value of the item taken was between $300 and $749.

¶ 35    At the sentencing hearing, the court initially entered a conviction and sentence for the felony theft from a person count; but after the prosecution reminded the court that it had entered a judgment of acquittal on that count, the court reversed itself and did not enter a conviction or sentence on the felony theft charge.  However, it appears that the court and the parties overlooked the jury's guilty verdict on the misdemeanor theft count and a judgment of conviction and sentence were not entered for that count.

¶ 36    On remand, Lavadie's new trial can encompass the aggravated robbery, menacing, and misdemeanor theft counts that the jury found him guilty of in the first trial.  However, because the court entered a judgment of acquittal on the felony theft from a person

22

count, he cannot be retried for that count. *See People v. Porter*, 2015 CO 34, ¶ 9 (the Double Jeopardy Clauses of the United States and Colorado Constitutions prevent a second prosecution for the same offense after an acquittal).

## IV. Conclusion

¶ 37 The judgment of conviction is reversed, and the case is remanded for a new trial consistent with the views expressed in this opinion.

JUDGE FURMAN and JUDGE PAWAR concur.