489 P.3d 1208
The PEOPLE of the State of Colorado, Petitioner
v.Paul Alex LAVADIE, Respondent.
Supreme Court Case No. 20SC251 Supreme Court of Colorado.
June 7, 2021
Rehearing Denied July 26, 2021
Attorneys for Petitioner: Philip J. Weiser, Attorney General Jacob R. Lofgren, Assistant Attorney General Denver, Colorado
Attorneys for Respondent: Megan A. Ring, Public Defender Jud Lohnes, Deputy Public Defender Denver, Colorado
En Banc
JUSTICE HOOD delivered the Opinion of the Court.
¶1 Before his trial on multiple felony charges, the defendant, Paul Alex Lavadie, informed the trial court that he wanted to represent himself. In response, the court provided a standard advisement pursuant to People v. Arguello, 772 P.2d 87 (Colo. 1989), which included questions designed to protect Lavadie's right to counsel. Lavadie's answers to the court's questions were largely non-responsive, often featuring cryptic references to "the corporation." Finding their colloquy insufficient to establish a knowing, intelligent, and voluntary waiver of Lavadie's right to counsel, the trial court refused to let Lavadie exercise the right to represent himself. A jury convicted Lavadie of aggravated robbery, among other charges.
¶2 A division of the court of appeals reversed his conviction, reasoning that before the trial court denied Lavadie his right to represent himself, it should have advised him that his continued failure to cooperate with the court's questioning would result in the court appointing counsel for him and declining to entertain a subsequent request to represent himself. People v. Lavadie, 2020 COA 37, ¶ 31, ––– P.3d ––––. The division further held that the trial court also erred when it didn't allow Lavadie an opportunity to indicate he would cooperate when he reasserted his desire to represent himself at subsequent proceedings. Id. ¶3 We reverse the division's judgment. We hold that in deciding whether defendants may exercise their right to self-representation, the trial court must first consider whether the totality of the circumstances demonstrates that the defendant has voluntarily, knowingly, and intelligently waived the right to counsel. Only if the totality of the circumstances supports a valid waiver of the right to counsel can the defendant exercise the right to self-representation. While a trial court would do better to warn defendants that their lack of cooperation or their obstreperous behavior during an Arguello advisement can prevent self-representation, the failure to provide such a warning alone doesn't constitute error. We likewise decline to impose on trial courts an affirmative duty to revisit a deficient waiver of the right to counsel. If the defendant demonstrates a willingness to provide meaningful responses to the court's questioning, the better practice would be for the court to readvise the defendant. But again, we reject an inflexible rule to this effect given the varied, and often shifting, circumstances with which trial courts are regularly confronted in this context.
¶4 Because the totality of the circumstances supports the trial court's finding that Lavadie didn't properly waive his right to counsel, the trial court didn't err in denying him the right to represent himself.
I. Facts and Procedural History
¶5 The relevant facts begin with Lavadie walking down a street, minding his own business. As it happened, he was dressed in an orange and pink sarong and a black tank top with gold rhinestones, and he was cleaning under his fingernails with a pocketknife.
¶6 Two men in a truck pulled over in front of Lavadie, laughing loudly as the driver took a picture of Lavadie. Lavadie then picked up a rock, while allegedly still holding the knife, and approached the truck, demanding that the driver delete the photo. When the driver refused, Lavadie reached into the truck, grabbed the phone, spat in the truck, and walked away. The driver got out of his truck, grabbed a shovel, and chased Lavadie down the street. Lavadie eventually returned the phone to the driver when he promised that he would delete the photo.
¶7 The prosecution subsequently charged Lavadie with aggravated robbery, theft from a person, and two counts of felony menacing. Appearing pro se at his advisement, Lavadie presented the court with an unnotarized affidavit, which he referred to as a "denial of corporation," explaining his sovereign citizen beliefs and denying the court's jurisdiction over him.1 He then indicated to the court that he didn't want to be represented by an attorney.
¶8 Lavadie appeared pro se again at the preliminary hearing and denied the court's offer to appoint him counsel, stating that he "wish[ed] not to enter into the corporation by any means." He also cited some caselaw to argue that he should have received a probable cause hearing within forty-eight hours of his arrest.
¶9 After denying his legal challenge, the court attempted to conduct an Arguello advisement. The following colloquy took place:
THE COURT: Mr. Lavadie, I do need to have a discussion with you about your decision to represent yourself and so I have some questions for you. First of all, do you understand that you have the right to be represented by an attorney?
LAVADIE: No, I do not understand anything.
THE COURT: All right. Do you understand that if you cannot afford an attorney, one will be appointed to represent you at no cost to you?
LAVADIE: I would not like to enter into the corporation ... for any reason.
THE COURT: Do you understand I will appoint an attorney if you want an attorney to represent you?
LAVADIE: I, I, [judge], I don't mean ... any disrespect. I wish not to participate with the established corporation that is a half-truth, which makes it a whole lie.
THE COURT: All right, and that's an important answer to that question. And so I understand you don't want to participate, but I have to ask you these questions, and once I have answers to these, we can be done with this. Do you understand that, Mr. Lavadie?
LAVADIE: Yes, sir.
¶10 At that point, the court tried to determine whether Lavadie understood the charges against him. Lavadie responded that he hadn't been given discovery. He also inquired about how the prosecution could prove two counts of menacing, but the court informed him that it was "an issue for trial" and attempted to continue the advisement.
¶11 Lavadie responded to most of the court's questions by asserting that he did not wish to take part in "the corporation." For example, when the court asked him whether he knew that the court could appoint him advisory counsel to help him, Lavadie responded, "Excuse me, [judge]. This lawyering craft that was created only to represent the corporation, which does not have my best interest at hand, I wish not to participate with, so I would ask you, [judge], to please, please don't offer me this no more." Finally, the court asked him, "Do you wish to have an attorney?" And Lavadie reiterated, "I wish not to at all enter into the corporation."
¶12 Following the advisement, the trial court made the following finding:
[B]ased upon the record and the advisement given pursuant to Arguello , the Court finds, based upon information provided by the Defendant, he did come in and at least provided the Court with a cite to authority that was relevant and applicable, so he does have at least a minimal understanding of the law, however, he indicates that he's not participating in the proceeding and he questions the authority and jurisdiction of the Court, he indicates he doesn't wish to participate, he hasn't demonstrated that he can sufficiently answer any of the requirements for the Court to make a finding pursuant to Arguello that he is competent to represent himself, and for those reasons, the Court will appoint a public defender to represent Mr. Lavadie.
¶13 After the court said it would continue the preliminary hearing because Lavadie was unable to represent himself, Lavadie asked, "Did I do something wrong?" The court didn't respond to his question.
¶14 Three days later, at the preliminary hearing, Lavadie appeared with a public defender. Lavadie and his attorney both informed the court that Lavadie didn't want to be represented by counsel. But Lavadie failed to cooperate with the court's instructions during the hearing. After multiple warnings, the court eventually held him in contempt, imposed a three-month jail sentence, and had him removed from the courtroom. Lavadie's public defender then moved to withdraw from the case, claiming that an ethical conflict of interest existed. The court granted his motion and appointed alternate defense counsel ("ADC").
¶15 At the preliminary hearing, the ADC informed the court that Lavadie wanted to represent himself. The ADC also explained that Lavadie suffers from (an unspecified form of) mental illness but noted that he had previously worked with Lavadie on other legal matters and that he believed Lavadie was competent both to stand trial and to represent himself. The ADC therefore asked the court to make a finding about Lavadie's mental competence to represent himself pursuant to Indiana v. Edwards, 554 U.S. 164, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), and People v. Davis, 2015 CO 36M, 352 P.3d 950.
¶16 The court then responded: [F]or the purpose of both [Davis] and Arguello, I believe the Court does have to find that based upon the totality of the circumstances there's a demonstration of a knowing and intelligent waiver of the right to be represented by an attorney. Thus indicating also that one is able [in a] knowing, voluntary and intelligent way to exercise the right to self-representation. That requires the understanding of the nature of the charges, the statutory offenses included with them, the range of liable punishments they're under, possible defenses to the charges, circumstances and mitigation thereof and all the other facts essential to a broad understanding of the whole matter.
Part of that is an understanding of the jurisdiction of this Court, the applicable validity of the rules of law that govern the proceedings in this matter as well as ... both procedural and substantive law that govern[ ] the case and that's what the Defendant is lacking in terms of being able to knowingly and intelligently represent himself in this case.
And so the Court previously made those findings on the record and I find nothing new today to indicate that anything has changed with regard to the ability ... of the Defendant to represent himself. And so the Court can't — doesn't make any change in the Arguello determination it previously made when it appointed ... Counsel.
¶17 Lavadie continued to assert his sovereign citizen rights throughout the proceedings and argued that the ADC was not his attorney. Lavadie also twice refused to appear in court, and when he did appear, he refused to cooperate with the court or respond to the court's questions, claiming that the court lacked jurisdiction over him. But the court still proceeded with the trial, reasoning that it had resolved Lavadie's attempted waiver of his right to counsel.
¶18 The ADC represented Lavadie at trial, and a jury convicted Lavadie of aggravated robbery, felony menacing, and misdemeanor theft.2 ¶19 Lavadie appealed, arguing that the trial court violated his constitutional right to represent himself when it forced him to go to trial represented by ADC. A division of the court of appeals agreed and reversed his convictions. Lavadie , ¶ 2. The division held that before denying uncooperative defendants, like Lavadie, the right to represent themselves, the trial court must advise them that their continued failure to cooperate with questioning will result in the court finding that the waiver of their right to counsel is invalid, meaning they can't proceed pro se. Id. The division further held that "even when such an advisement is given, the court should still reinvestigate its decision to appoint counsel for a defendant against his wishes if, at a subsequent hearing, the defendant indicates that he is willing to have an appropriate dialogue with the court." Id. at ¶ 30. The division concluded that because the trial court didn't expressly warn Lavadie or allow him an opportunity to engage in further dialogue when he reasserted his right to represent himself, the trial court erred in appointing him counsel. Id. at ¶ 31. The division remanded for a new trial. Id. at ¶ 32.
¶20 The prosecution petitioned this court for certiorari review of the division's judgment, and we granted the petition.3 II. Analysis ¶21 We begin by outlining the standard of review and the law governing the relationship between the right to counsel and the right to self-representation. We then address waiver of the right to counsel as a predicate to self-representation. In doing so, we consider whether trial courts must warn defendants that their continued failure to cooperate with the court's questioning or their obstreperous behavior will result in the court finding that they have not waived their right to counsel, and therefore, may not proceed pro se. We conclude that such a warning, while preferable, isn't required. Similarly, we conclude that the trial court has no affirmative duty to revisit a deficient waiver of the right to counsel. Instead, we conclude that the "totality of the circumstances" test resolves the issues before us. Finally, we consider whether Lavadie properly waived his right to counsel. We conclude that he did not. Therefore, the trial court was correct in denying Lavadie the right to represent himself.
A. Standard of Review ¶22 Whether a defendant effectively waived the right to counsel, and therefore can exercise the right to self-representation, is a mixed question of fact and law. See People v. Bergerud, 223 P.3d 686, 693 (Colo. 2010) ; People v. Alengi, 148 P.3d 154, 159 (Colo. 2006). On appeal, we "accept the trial court's findings of historic fact if those findings are supported by competent evidence, but we assess the legal significance of the facts de novo." People v. Coke, 2020 CO 28, ¶ 10, 461 P.3d 508, 512 (quoting People v. Davis, 2019 CO 24, ¶ 14, 438 P.3d 266, 268 ).
B. Waiver of the Right to Counsel as a Predicate for Self-Representation
¶23 The Sixth Amendment to the United States Constitution guarantees defendants the right to counsel. U.S. Const. amend. VI ; see also Argersinger v. Hamlin, 407 U.S. 25, 30, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) ; Arguello, 772 P.2d at 92. The Supreme Court has also held that the Sixth Amendment implies a right to self-representation. Faretta v. California, 422 U.S. 806, 832, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ; Arguello, 772 P.2d at 92. The Colorado Constitution also states that " [i]n criminal prosecutions the accused shall have the right to appear and defend in person." Colo. Const. art. II, § 16 ; see also Arguello, 772 P.2d at 92. ¶24 Honoring these contrasting rights has been a persistent challenge for courts. The trial court can commit reversible error by either improperly granting a defendant's request to proceed pro se —thereby depriving the defendant of the right to counsel—or by denying the defendant's right to self-representation. See United States v. Pryor, 842 F.3d 441, 451 (6th Cir. 2016) ("Courts dealing with defendants seeking to represent themselves face a dilemma: the potential for an unconstitutional denial of the right to counsel if the right to self-representation is too quickly provided or reversal for unconstitutional denial of the right to self-representation if the right to counsel is too vigorously shielded."). ¶25 Because defendants who manage their own defense relinquish "many of the traditional benefits associated with the right to counsel," Faretta, 422 U.S. at 835, 95 S.Ct. 2525, the right to self-represent is conditioned on the requirement that defendants demonstrate "an intelligent understanding of the consequences of so doing," Arguello, 772 P.2d at 92 (quoting People v. Moody, 630 P.2d 74, 77 (Colo. 1981) ). Therefore, before defendants may proceed pro se, they must first waive their right to counsel. Id. at 93. ¶26 A defendant's waiver of counsel is effective only if (1) the defendant is competent to waive the right and (2) the waiver is made voluntarily, knowingly, and intelligently. Davis, ¶ 15, 352 P.3d at 954 ; Arguello, 772 P.2d at 93-95. Only the second prong of this analysis is at issue now. ¶27 A waiver is voluntary if it is "not extracted by threats or violence, promises, or undue influence." Davis, ¶ 18, 352 P.3d at 955 (quoting People v. Smith, 716 P.2d 1115, 1118 (Colo. 1986) ). ¶28 A waiver is knowing and intelligent if the record clearly shows that the defendant understood the nature of the charges, the statutory offenses included within them, the range of allowable punishments, the possible defenses to the charges and circumstances in their mitigation, and all other facts essential to a broad understanding of the whole matter. Arguello, 772 P.2d at 94. ¶29 The court must indulge every reasonable presumption against finding a waiver of the right to counsel. Id. at 93. ¶30 Even if the court finds a valid waiver of the right to counsel and the defendant is granted the right to self-represent, that right is not absolute. "The right of self-representation is not a license to abuse the dignity of the courtroom." Faretta, 422 U.S. at 834 n.46, 95 S.Ct. 2525. The trial court can therefore terminate the defendant's self-representation if the defendant deliberately engages in "serious and obstructionist misconduct." Id. ¶31 Although the division acknowledged that Lavadie's behavior "made it difficult, if not impossible, for the court to ascertain whether his waiver of his right to counsel was knowing and intelligent," Lavadie, ¶ 28, the division still concluded that the trial court erred when (1) it didn't tell Lavadie that "his failure to provide responsive answers to the questions would result in an attorney being appointed to represent him," id. ; and (2) it didn't allow him "an opportunity to indicate he would engage in an appropriate dialogue with the court when [he] reasserted at subsequent hearings that he wanted to represent himself," id. at ¶ 31.
¶32 Relying on Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), the division held that:
[B]efore a trial court can conclude a defendant will not be permitted to represent himself based on obstreperous or uncooperative conduct, it must advise the defendant that one possible consequence of refusing to answer the court's questions, offering nonsensical responses to those questions, or generally refusing to acknowledge the court's jurisdiction will be a denial of his request to represent himself, the appointment of counsel against his wishes, and a barrier to the court entertaining a subsequent request to represent himself. Lavadie, ¶ 30. The division further held that "even when such an advisement is given, the court should still reinvestigate its decision to appoint counsel for a defendant against his wishes if, at a subsequent hearing, the defendant indicates that he is willing to engage in an appropriate dialogue with the court and properly conduct himself." Id.
¶33 While we're with the division in spirit, we disagree with its imposition of a fixed set of rules for dealing with recalcitrant defendants who seek to proceed pro se. Certainly, trial courts would do better to warn defendants that lack of cooperation or obstreperous behavior during an Arguello advisement could leave the court unable to honor their request to self-represent. Admittedly, sometimes what may seem like obstinance or gamesmanship is nothing more than genuine misunderstanding. But imposing an immutable rule about such warnings leads us closer to a mandatory checklist, with all its trip-wire implications, and further from a flexible inquiry about a defendant's basic understanding of his constitutional rights regarding representation.
¶34 Similarly, we decline to impose an affirmative duty on trial courts to reinvestigate the decision to appoint counsel to an unwilling defendant even if the defendant demonstrates a willingness to provide meaningful responses to the court's questioning. Under such circumstances, as the division suggests, the better practice would be for the court to readvise the defendant. But, to the extent that the division meant to impose a strict rule about reinvestigation, we disagree given the highly disparate circumstances that can arise in this context.
C. The Totality of the Circumstances Must Support a Waiver of the Right to Counsel
¶35 Instead of mandating new procedural requirements, we find that the "totality of the circumstances" test that we have reiterated in our prior opinions resolves the issues before us.
¶36 In Arguello , the defendant didn't expressly waive his right to counsel, and the trial court didn't expressly advise him of the dangers of proceeding pro se. 772 P.2d at 96. Those facts alone might have resulted in a reversal of Arguello's conviction following a trial in which he was required to proceed pro se. But instead of stopping there, we reviewed the "totality of the circumstances in the whole record" to determine whether Arguello, "by his conduct," effected a voluntary, knowing, and intelligent waiver of his right to counsel. Id. True, we required trial courts to conduct a specific inquiry on the record to ensure that the waiver was valid, and we gave the questions outlined in the Colorado Trial Judges' Benchbook a thumbs up. Id. at 95-96. But we also observed that "[a] court's failure to comply substantially with this requirement does not automatically render the waiver invalid" if the totality of the circumstances supports the validity of the waiver. Id. at 96. ¶37 Davis doubles down on the utility of the totality of the circumstances test. In Davis , a division of the court of appeals concluded that the trial court erred in failing to make a competency finding pursuant to the Supreme Court's decision in Edwards . Davis, ¶¶ 1-9, 352 P.3d at 952-54. The division prescribed a new standard in light of Edwards . Id. We reversed, deeming a new standard unnecessary. We reasoned that "Colorado's totality-of-the-circumstances analysis for a valid waiver of the right to counsel affords trial courts sufficient discretion to consider a defendant's mental illness." Id. at ¶ 22, 352 P.3d at 955.
¶38 Similarly, in People v. Janis, 2018 CO 89, ¶¶ 20, 25, 429 P.3d 1198, 1202-03, albeit in a different context, we declined to adopt a per se rule requiring an advisement to validate the defendant's waiver of her right to be present during trial. We highlighted that, although a formal advisement was preferred, it wasn't always required. Id. at ¶ 20, 429 P.3d at 1202. And we even used the right to counsel as an example, stating that "[w]hile courts indulge every reasonable presumption against the waiver of a fundamental constitutional right, ‘the determination of whether there has been an intelligent waiver of [the] right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case.’ " Id. (alteration omitted) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ).
¶39 Our prior decisions therefore illustrate our unwavering support for the trial court's consideration of the totality of the circumstances in determining whether a defendant's waiver of the right to counsel was valid and, therefore, whether the defendant may exercise the right to self-representation. That standard necessarily gives trial courts some flexibility in deciding whether defendants need a warning that their lack of cooperation or their obstreperous behavior can result in the loss of their right to self-representation.
¶40 Significantly, the Supreme Court's decision in Allen , on which the division relied, does not require trial courts to expressly warn defendants of their imminent loss of a constitutional right. In Allen, the defendant's behavior during his trial was so disruptive and disrespectful to the court "that his trial [couldn't] be carried on with him in the courtroom." 397 U.S. at 343, 90 S.Ct. 1057. After warning the defendant that he would be removed from the courtroom if he continued to misbehave, the trial court removed him from the court for almost the entirety of the prosecution's case-in-chief. Id. at 340-41, 90 S.Ct. 1057. The Supreme Court concluded that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a [disorderly] manner." Id. at 343, 90 S.Ct. 1057.
¶41 But the Supreme Court merely approved of the trial court's warning to the defendant; it didn't mandate it. In fact, the Court sympathized that "trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case," and acknowledged that "[n]o one formula for maintaining the appropriate courtroom atmosphere will be best in all situations." Id. And in outlining the possible remedies available to trial court judges faced with "obstreperous" defendants, the Court posited that one option would be to "take [the defendant] out of the courtroom until he promises to conduct himself properly." Id. at 344, 90 S.Ct. 1057. Nowhere did it condition a defendant's removal on the defendant receiving a warning. See Gilchrist v. O'Keefe, 260 F.3d 87, 96 (2d Cir. 2001) ("We note that while Allen stated that a defendant could be removed from the courtroom ‘after he has been warned by the judge,’ it did not indicate whether such a warning was a requirement in every situation." (Sotomayor, J.) (quoting Allen, 397 U.S. at 343, 90 S.Ct. 1057 )).
¶42 The division also relied on Pryor, 842 F.3d at 450-51, in concluding that the trial court had to warn Lavadie that his failure to provide responsive answers to the questions would result in an attorney being appointed to represent him. Lavadie, ¶¶ 27-28. The trial court in Pryor was similarly faced with an uncooperative defendant who asserted his sovereign citizen rights and sought to represent himself. 842 F.3d at 445-47, 49. The Sixth Circuit noted that "no action against an unruly defendant is permissible except after he has been fully and fairly informed that his conduct is wrong and intolerable, and warned of the possible consequences of continued misbehavior," and it held that the trial court properly denied the defendant's request to proceed pro se because it had first warned him of the consequences of his lack of cooperation. Id. at 450 (quoting Gray v. Moore, 520 F.3d 616, 623 (6th Cir. 2008) ). But the Pryor court relied on Justice Brennan's solo concurrence in Allen , which attached dispositive significance to a warning. See id. As noted, we don't read the majority opinion in Allen as requiring defendants to be forewarned. Therefore, Pryor , which is not binding on us anyway, doesn't change our analysis. See People v. Dunlap, 975 P.2d 723, 748 (Colo. 1999) ("[T]his court is not bound by a federal circuit court's interpretation of federal constitutional requirements."). ¶43 In sum, we continue to look to a flexible, totality-of-the-circumstances test to determine if a defendant has validly waived his right to counsel. Absent a waiver of that right, the defendant may not represent himself.
D. Lavadie Did Not Properly Waive His Right to Counsel ¶44 Lavadie argues that the trial court didn't make a finding on whether he knowingly or intelligently waived his right to counsel but only commented on his legal competency to proceed pro se. We disagree.
¶45 Lavadie is correct that his legal acumen has no bearing on whether he validly waived his right to counsel. See Faretta, 422 U.S. at 835, 95 S.Ct. 2525 ("[A] defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation ...."); People v. Romero, 694 P.2d 1256, 1264 (Colo. 1985) ("[A]n accused's legal knowledge is not relevant to an assessment of whether his exercise of the right to defend himself is knowingly made ...."). But we don't read the trial court's findings as being limited to Lavadie's ability to represent himself.
¶46 Following the Arguello advisement, the court noted that Lavadie had "at least a minimal understanding of the law." But the court also commented on Lavadie's defiance, noting that "he question[ed] the authority and jurisdiction of the Court," and concluding that "he ha[d]n't demonstrated that he [could] sufficiently answer any of the requirements for the Court to make a finding pursuant to Arguello ."
¶47 With record support, the court found that Lavadie hadn't properly waived his right to counsel pursuant to Arguello . Based on the totality of the circumstances, we agree. Although the record certainly demonstrates that Lavadie did not want to be represented by a lawyer, there is a distinction between indicating a strong desire to forego representation and the knowing and intelligent waiver of that representation.
¶48 As we outlined earlier, a waiver of the right to counsel is knowing and intelligent if the record clearly shows that the defendant understood the nature of the charges, the statutory offenses included within them, the range of allowable punishments, the possible defenses to the charges and circumstances in their mitigation, and all other facts essential to a broad understanding of the whole matter. Arguello, 772 P.2d at 94.
¶49 Here, few facts suggest that Lavadie's waiver of his right to counsel was knowing or intelligent. When asked whether he understood that he had a right to be represented by an attorney, Lavadie responded, "No, I do not understand anything." When the court inquired into his understanding of the charges against him and the range of allowable punishments, Lavadie repeatedly gave unresponsive answers, reasserted his sovereign citizen beliefs, or refused to participate in the proceeding. His answers therefore didn't convey that he understood the right he was waiving.
¶50 And although Lavadie repeated his request to represent himself multiple times throughout the proceedings, there was no indication in the record that he was willing to engage with the court in answering any of its questions. In fact, Lavadie at various times failed to follow the court's instructions or to respond to the court's questioning. ¶51 The trial court therefore didn't err in concluding that Lavadie failed to properly waive his right to counsel and in subsequently denying his request to represent himself.
III. Conclusion
¶52 We reverse the judgment of the court of appeals.
1 The "sovereign citizen" movement is an ideology that "rejects the legitimacy of United States jurisdiction over its adherents." United States v. Pryor, 842 F.3d 441, 445 n.2 (6th Cir. 2016).
2 The theft from a person count was dismissed during trial, and the jury was instructed on the lesser included offense of misdemeanor theft. The prosecution also dismissed one of the menacing counts that involved the passenger as a victim.
3 We granted certiorari to review the following issues:
1. Whether, under circumstances where a defendant refuses to participate in an advisement pursuant to People v. Arguello, 772 P.2d 87 (Colo. 1989), a district court must advise the defendant that his failure to participate in the advisement will cause him to lose the right to represent himself.
2. Whether, under circumstances where a defendant refuses to participate in an initial Arguello advisement, a district court must repeat that advisement at every subsequent hearing where he repeats his request to represent himself.