22CA1486 Peo v Carey 04-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA1486
El Paso County District Court No. 15CR1394
Honorable Erin Sokol, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

John Clifford Carey,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 17, 2025

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Shann Jeffery, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, John Clifford Carey, appeals the postconviction court's denial of his Crim. P. 35(c) motion. We affirm.

## I. Background

¶ 2 On March 25, 2015, Carey went to the properties of T.S. and S.B. in search of his wife. While wielding a machete, Carey forcibly entered T.S.'s trailer, grabbed T.S. by the beard, held the machete against his face, and questioned T.S. about his wife. After T.S. told him he did not know where his wife was, Carey punched T.S. in the face and left.

¶ 3 Carey then went to the adjacent trailer, which belonged to S.B. Upon entering, he saw his wife and another man, B.K., sitting in the living room. Still holding the machete, Carey approached B.K. and asked if B.K. was "getting [his wife] high." When B.K. said "[N]o," Carey punched him several times before following his wife into another room. Carey then saw S.B. and asked her if she was "getting [his wife] high," and S.B. responded, "[N]o."

¶ 4 Carey returned to T.S.'s trailer, used the machete to cut T.S.'s face, pulled out part of his beard, and punched him again. Carey then went back to S.B.'s trailer, argued with his wife, and left as the police arrived.

¶ 5     During trial, at which Carey represented himself, Carey argued that his actions were justified because he reasonably believed that his wife was in danger and did not intend to harm anyone.  A jury rejected this defense and found Carey guilty of first degree burglary, second degree burglary, third degree assault, and two counts of felony menacing.  Following a hearing on Carey's habitual criminal charges, the trial court merged his third degree assault conviction into his conviction for first degree burglary and sentenced him to a controlling term of sixty-four years in the custody of the Department of Corrections.

¶ 6     In June 2019, a division of this court affirmed Carey's convictions and sentences on direct appeal in *People v. Carey*, (Colo. App. No. 16CA0358, Feb. 21, 2019) (not published pursuant

to C.A.R. 35(e)) (*Carey I*).[1]  Carey filed a timely motion for postconviction relief pursuant to Crim P. 35(c) and requested the appointment of counsel.  The postconviction court granted a partial hearing and denied Carey's postconviction claims.[2]

## II.      Competence to Proceed Pro Se

¶ 7      Carey contends that he was incompetent to represent himself at trial and that the postconviction court erroneously conflated the standard for determining competence to waive the right to counsel with the standard for competence to represent oneself at trial under

---

[1] In the direct appeal, Carey alleged that (1) the trial court failed to inquire into an alleged conflict of interest between him and appointed counsel; (2) the trial court failed to advise him of his right to conflict-free counsel; (3) his waiver of counsel was not knowing, voluntary, or intelligent; (4) he was never advised of the sentencing exposure he'd face if adjudicated an habitual offender; (5) he was confused about whether certain matters could be litigated if counsel were reappointed; (6) the trial court improperly denied his right to proceed on a plea of not guilty by reason of insanity; (7) the trial court abused its discretion in denying his request for a continuance; and (8) the prosecution presented insufficient evidence to support his burglary convictions.

[2] Carey's Crim. P. 35(c) motion raised issues that were not reraised here and that are therefore abandoned.  They include Carey's contention that the trial court erred when it precluded him from introducing certain evidence and properly cross-examining witnesses; erroneously instructed the jury; and erroneously rejected evidence of his mental condition.

*Indiana v. Edwards*, 554 U.S. 164 (2008).  He further claims the court should have granted him a hearing on this issue.  We disagree.

## A.    Additional Facts

¶ 8      On June 1, 2015, Carey filed a motion to proceed pro se and for access to his discovery.  He argued that he "ha[d] been ke[pt] in the dark on his intire [sic] case"; had not been able to review his discovery; and, therefore, wished to represent himself.

¶ 9      At a pretrial hearing on June 11, 2015, Carey expressed displeasure with his public defender.  The trial court found no conflict of interest in the representation; explained that it would not be conducting another preliminary hearing; and then advised Carey concerning a waiver of the right to counsel, consistent with *People v. Arguello*, 772 P.2d 87 (Colo. 1989).  The court explained that Carey faced a maximum sentence of forty-eight years of incarceration.  *See id.*

¶ 10      During the Arguello advisement, Carey said (1) he did not know what a Curtis advisement was; (2) he had six prior felonies; and (3) he believed that if one of the named victims said she did not want to press charges, he could "have got one of those charges

4

dismissed," even after the court had found probable cause at the preliminary hearing. *See People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984). Carey agreed to speak with his public defender once more before deciding whether to waive his right to counsel.

¶ 11    A week later, the trial court reminded Carey of the earlier Arguello advisement and asked if he had consulted with counsel. Carey said he had but that counsel still did not want to give him access to discovery, "and that's the biggest thing with me." The court then asked Carey if he wanted more time to think about whether to proceed pro se, and Carey said, "Your Honor, it's – – I'm going to have to go pro se on this matter. I'm going to have to do it." When the court asked Carey to clarify what he meant, Carey said,

> It's the only way I feel I'm going to get a fair trial to where I can examine all the case against me, if I have access to that, and the only way I'm going to have access to my discovery and to all of the evidence that is filed against me is for me to go pro se.

¶ 12    The court then asked whether Carey remembered their earlier discussion about the "very substantial prison sentences [he was] looking at if convicted of these charges," and Carey said, "[Y]es."

Carey also confirmed his understanding that he would not receive another preliminary hearing. Carey further confirmed that he had no ethical or legal conflict with the public defender's office. And he also acknowledged the following:

- He was not under the influence of drugs except for prescribed medications, had no history of mental health problems, had sufficient time to consult with counsel, and had completed a GED.

- He had represented himself in a prior mediation, was familiar with the Colorado Rules of Evidence and Criminal Procedure, had previously admitted evidence at a motions hearing and conducted cross-examinations, and knew how to use process servers to subpoena witnesses for trial.

- He knew that law library access may be limited, that the State could not provide him a computer, and that communication with the prosecution may be difficult.

- He understood his right to not testify and knew that proceeding pro se may impact that right, and he had never undergone a competency examination.

¶ 13 The court inquired again about prior felonies, and the prosecutor stated his belief that Carey had six. Carey understood that those convictions could be used against him for credibility purposes if he testified and that they might be used to aggravate his sentence if convicted. The court then explained his right to the assistance of advisory counsel and to have an investigator. It concluded by saying,

> You can be a very smart and intelligent individual, but this is a complex issue and rules of evidence and rule[s] of procedure are significant and important. My concern is you don't have sufficient knowledge and training to do as good of a job as [the public defender] or any other attorney would. Do you still want to represent yourself?

Carey responded affirmatively.

¶ 14 Approximately one week later, the prosecutor amended the charges to add five habitual criminal counts. Carey appeared pro se the same day, and the trial court appointed advisory counsel.

¶ 15 On August 27, 2015, Carey conceded that he "[could not] adequately defend [himself]." The court discussed reappointing the public defender, and Carey stated his willingness to waive speedy

7

trial to accommodate this. Intending to reappoint the public defender at the next hearing, the court dismissed advisory counsel.

¶ 16     On September 3, 2015, the trial court offered to reappoint the public defender and gave Cary additional time to consider the decision. One week later, Carey decided he wished to continue pro se.

¶ 17     In his postconviction motion, Carey argued that his "confusion, frustration, and bewilderment" at trial demonstrated that he had invalidly waived his right to counsel. He argued that because the trial court relied in part on a psychiatric evaluation[3] finding him competent to stand trial in its decision to permit him to represent himself, it neglected to consider or to apply the heightened standard for determining competence to represent oneself set forth in *Edwards*. He also argued that appellate counsel was ineffective for failing to raise this issue in the direct appeal.

¶ 18     The postconviction court found the merits of Carey's argument successive because they could have been raised in the direct

---

[3] Before trial, the court raised Carey's competency and received a report finding him competent. Carey did not object to the court's finding, nor did he request a second evaluation.

appeal. Turning to the effectiveness of appellate counsel, the postconviction court found no prejudice, based on *People v. Davis*, 2015 CO 36M, because this argument was not stronger than the other issues raised. In *Davis*, the supreme court rejected the need for a heightened standard and held that "Colorado's existing analytical framework provides the standards necessary for trial courts to exercise the discretion described in *Edwards*." *Id.* at ¶ 25.

B.    Standard of Review and Applicable Law

¶ 19    We review a postconviction court's denial of a Crim. P. 35(c) motion without a hearing de novo. *People v. Wilson*, 397 P.3d 1090, 1094 (Colo. App. 2011). We also review interpretations of the rules of criminal procedure de novo, *People v. Corson*, 2016 CO 33, ¶ 44, including whether a postconviction motion is successive, *People v. Thompson*, 2020 COA 117, ¶ 42.

¶ 20    Crim. P. 35(c) permits postconviction review of alleged constitutional errors in criminal proceedings. *People v. Sherman*, 172 P.3d 911, 915-16 (Colo. App. 2006). A postconviction court may deny a Rule 35(c) motion without a hearing when (1) the motion, files, and record clearly establish that the defendant is not entitled to relief; (2) the allegations, even if true, do not provide a

basis for relief; or (3) the claims are bare and conclusory in nature and lack supporting factual allegations. *See* Crim. P. 35(c)(3)(IV); *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005). If a court summarily denies a postconviction motion, it "shall enter written findings of fact and conclusions of law in denying the motion." Crim. P. 35(c)(3)(IV).

¶ 21    The rule also bars claims that are successive. A Crim. P. 35(c) claim is successive if it was previously raised and resolved or could have been previously raised and resolved in a prior appeal or postconviction proceeding. Crim. P. 35(c)(3)(VI), (VII). "Rule 35 proceedings are intended to prevent injustices after conviction and sentencing, not to provide perpetual review." *People v. Rodriguez*, 914 P.2d 230, 249 (Colo. 1996). Subject to exceptions inapplicable here, a court is required to deny any successive postconviction claims. *See* Crim. P. 35(c)(3)(VI)-(VII).

¶ 22    Finally, "[a]ppellate counsel is not required to raise on appeal every nonfrivolous issue a defendant desires to raise." *People v. Trujillo*, 169 P.3d 235, 238 (Colo. App. 2007). Appellate counsel's choice of which issues to raise is a strategic decision that is presumed effective and can be overcome "only when ignored issues

are clearly stronger than those presented." *Id.* (alteration and citation omitted).

### C.  Analysis

¶ 23    We agree with the postconviction court that Carey's claim concerning his competence to represent himself at trial is successive and could have been raised in his direct appeal.  Indeed, the record shows that appellate counsel challenged, and a division of this court specifically addressed, Carey's waiver of the right to counsel in the direct appeal.  *Carey I,* No. 16CA0358, slip op. at ¶ 7. Moreover, while Carey did not object to the competency evaluation's findings in the trial court, nothing prevented him from challenging those findings under the plain error standard of review on direct appeal.

¶ 24    Additionally, Carey's argument in his postconviction motion concerning his incompetence was based on information already in the record — including his behavior at trial, his equivocation about whether to represent himself, and the legal standard the district court applied.  He did not identify any specific evidence outside the record, beyond an assertion that he would have presented a psychological report addressing the heightened standard, that

11

would necessitate a hearing. *See Wilson*, 397 P.3d at 1094-95 (competency issue found successive when the record on direct appeal contained all the information relevant to the competency determination, and it was unclear what additional information defendant would have included); *cf. Moore v. People*, 2014 CO 8, ¶¶ 14, 16 (holding that a challenge to a waiver of the right to testify cannot be raised on direct appeal because whether the waiver was knowing, voluntary, and intelligent requires consideration of facts outside the record). Nor did he otherwise explain why this issue could not have been raised on direct appeal. However, because the Colorado Supreme Court has held that no such heightened standard exists in Colorado, *supra* Part II. A, such a report would have been immaterial. Therefore, we discern no error in the court's decision not to grant a hearing on this issue.

¶ 25     Concerning Carey's ineffective assistance of appellate counsel argument, we first note that the opening brief does not challenge the postconviction court's basis for denying his claim, i.e., the holding in *Davis*, 2015 CO 36M. Instead, Carey argues generally that an evidentiary hearing was required to show how this particular claim was a stronger appellate issue than the issues

actually raised. But his strength claim is predicated on there being a heightened standard of competency to proceed to trial, which *Davis* specifically rejected. *See id.* at ¶ 25. He does not distinguish *Davis* or otherwise explain why the postconviction court erred in relying on it. And because the postconviction court and this court are bound by decisions of the supreme court, we discern no error in the postconviction court's finding that there was no ineffective assistance of appellate counsel. *See People v. Harmon*, 2019 COA 156, ¶ 3 n.1 (noting that the Colorado Court of Appeals is bound by holdings of the Colorado Supreme Court)

### III. Continuing Arguello Advisement

¶ 26    Carey next contends that the trial court should have given him another *Arguello* advisement following the filing of habitual criminal counts. Specifically, he argues that a court has a continuing duty to reassess whether a pro se defendant's waiver of the right to counsel is voluntary, knowing, and intelligent and that the postconviction court erroneously denied him a hearing on this issue. He further argues that appellate counsel was ineffective in failing to raise this issue on direct appeal. We disagree.

A.     Standard of Review and Applicable Law

¶ 27     We employ the same standard for reviewing postconviction motions as set forth above.  An indigent defendant has a Sixth Amendment right to the assistance of counsel in a criminal case. *King v. People*, 728 P.2d 1264, 1268 (Colo. 1986).  A defendant also has a correlative Sixth Amendment right of self-representation. *Faretta v. California*, 422 U.S. 806, 819 (1975); *People v. Johnson*, 2015 COA 54, ¶ 16.

¶ 28     "Effective waiver of counsel is a mixed question of fact and law that we review de novo."  *People v. Alengi*, 148 P.3d 154, 159 (Colo. 2006).  "Courts indulge every reasonable presumption against a waiver of [the] fundamental right [to counsel]," *King*, 728 P.2d at 1268, and "[a]ny doubts regarding the waiver must be resolved in [the] defendant's favor," *Arguello*, 772 P.2d at 93.

¶ 29     We similarly employ the same standard for reviewing the effectiveness of appellate counsel set forth above.  *Trujillo*, 169 P.3d at 238.

B.     Analysis

¶ 30     We begin with the People's assertion that this issue is not preserved for our review and agree that Carey's motion did not

14

specifically argue a continuing duty to assess the waiver of counsel under *Arguello*. Nevertheless, his motion extensively analyzed the waiver of counsel issue, which arguably included this issue. Therefore, assuming, without deciding that the issue was preserved, we conclude, for the same reasons described above, *supra* Part II.C, that it could have been raised in the direct appeal and is therefore successive.

¶ 31 Regarding the effectiveness of appellate counsel in failing to raise this issue on direct appeal, Carey does not cite any authority requiring a continuing duty to reassess the validity of a waiver of counsel. Therefore, we conclude he has failed to show that this issue was clearly stronger than the issues raised in the direct appeal. *See Trujillo*, 169 P.3d at 238.

## IV. Conflict of Interest

¶ 32 Carey next contends the postconviction court should have granted a hearing on whether the trial court failed to properly inquire into his conflict of interest with the public defender.[4] We

---

[4] Carey's brief groups two other issues with this contention: (1) an evidentiary issue and (2) an argument that appellate counsel was ineffective. Because he does not develop these arguments, we do

conclude this issue is successive because it was raised and resolved in the direct appeal.

¶ 33　Because this issue was decided in Carey's direct appeal, we conclude it is successive. Indeed, as the previous division noted, "[o]nce a trial court is put on notice of a potential conflict of interest between the defendant and defense counsel, it has a duty to inquire into the propriety of continued representation by counsel." *Carey I*, No. 16CA0358, slip op. at ¶ 23 (citing *People v. Edebohls*, 944 P.2d 552, 556 (Colo. App. 1996)).

¶ 34　Additionally, and contrary to his claim here, Carey specifically told the trial court that there was no ethical or legal conflict with the public defender — he simply wanted full access to his discovery. Thus, by his own admission, the trial court had nothing to conduct an inquiry about.

¶ 35　Finally, we are not persuaded by Carey's assertion that a hearing was necessary because he had an expert who would testify about appellate counsel's ineffectiveness in failing to raise this

---

not address them. *See People v. Liggett*, 2021 COA 51, ¶ 53 (appellate courts do not address undeveloped arguments), *aff'd*, 2023 CO 22.

16

claim.  Appellate counsel did raise this conflict claim in the direct appeal.

¶ 36    Accordingly, we discern no error in the postconviction court's ruling.

## V.    Ineffective Assistance of Pretrial Counsel

¶ 37    Carey next contends that pretrial counsel's ineffective assistance and, in particular, counsel's failure to investigate coerced him into waiving his right to counsel and, thus, that his waiver was not knowing, intelligent, and voluntary.  He further contends the postconviction court erred in failing to recognize the connection between these two events.  He also argues that the cumulative effect of counsel's errors denied him a fair trial.  We disagree.

### A.    Additional Facts

¶ 38    In its original ruling on the Rule 35(c) motion, the postconviction court granted Carey a hearing on "the issue of ineffective assistance of pre-trial counsel, cumulative error, and proportionality review" and requested supplemental briefing.

¶ 39    At his postconviction hearing, Carey's counsel presented affidavits from T.S. and S.B., the trailer owners, that stated neither

17

believed any criminal charges should have been filed. Specifically, S.B. said that she did not believe that Carey's actions constituted a burglary and also said the case should have been settled or resolved without a criminal trial.

¶ 40 Postconviction counsel then argued that if the ineffective assistance of pretrial counsel induces the defendant into waiving his right to counsel, such waiver cannot be deemed knowing, intelligent, and voluntary. Counsel further argued that Carey's pretrial counsel was ineffective in failing to conduct even the most minimal investigation into the alleged victim's potential statements. Carey's counsel argued that had pretrial counsel interviewed T.S. and S.B. at the outset of the case, the court would have learned that each of them had "reservations about whether a crime was committed, whether the crime went anything beyond misdemeanor third-degree assault, and whether [Carey] should have been prosecuted at all." Counsel further argued that, had pretrial counsel conducted these interviews, Carey would not have waived his right to counsel and elected to represent himself.

¶ 41 In a thorough, written order, the postconviction court concluded that the record did not support Carey's failure to

investigate claim. Citing pretrial hearings, the court found that "the primary reason [Carey] chose to proceed pro se was based on pretrial counsel's decision not to allow [Carey] unfettered access to discovery during [Carey's] pretrial incarceration." It further found that Carey failed to prove prejudice, noting that (1) the prosecution was fully aware of the witnesses' feelings about the case and did not dismiss it; (2) before trial, Carey litigated whether he could introduce this information at trial; (3) Carey admitted that he asked the prosecution to dismiss the case based on these witnesses' feelings; and (4) the jury heard the witnesses' feelings and still convicted him. The court found that because Carey could not demonstrate that he received ineffective assistance of pretrial counsel, his claim that his waiver of counsel was coerced by counsel's failure to investigate failed.

B.    Standard of Review and Applicable Law

¶ 42    Because the postconviction court is the trier of fact at an evidentiary hearing on a postconviction motion, we defer to the court's factual findings when they are supported by the record, but we review its legal conclusions de novo. *West v. People*, 2015 CO 5, ¶ 11.

¶ 43   To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

¶ 44   Under the first prong, to establish deficient performance, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "[J]udicial scrutiny of counsel's performance must be highly deferential, evaluate particular acts and omissions from counsel's perspective at the time, and indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Ardolino v. People,* 69 P.3d 73, 76 (Colo. 2003). Under the second prong, to establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

## C. Analysis

¶ 45     We agree with the postconviction court that Carey failed to establish the ineffective assistance of pretrial counsel by a preponderance of the evidence, for three reasons.  First, Carey's motion alleged counsel failed to interview unidentified relevant witnesses, but he produced the affidavits of only two witnesses whose statements and feelings about the case were disclosed to the prosecution well before trial and to the jury during trial.

¶ 46     Second, his motion alleged that pretrial counsel failed to appropriately test the machete and to advise him on the law.  But at the hearing, Carey produced no testing results, expert testimony, or investigation by his private investigator to establish that any particular testing would have been more appropriate or possibly yielded different results.  Moreover, Carey's motion did not identify, nor did he argue at the hearing, the particular area of law on which counsel should have advised him.

¶ 47     Finally, the record supports the court's finding that a lack of pretrial investigation did not coerce Carey to waive his right to counsel.  Indeed, the numerous pretrial hearings are replete with Carey's complaints concerning counsel's decision not to give him

unfettered access to his discovery and Carey's decision to proceed pro se to remedy this situation. Because the record supports the court's findings, we affirm its ruling.

## VI. Proportionality

¶ 48 Carey last contends that his sixty-four-year habitual criminal sentence raises an inference of gross disproportionality that requires an extended proportionality review. We are not persuaded.

### A. Standard of Review and Applicable Law

¶ 49 We review de novo whether a defendant's sentence is grossly disproportionate. *Wells-Yates v. People*, 2019 CO 90M, ¶ 35 (*Wells-Yates I*).

¶ 50 The Eighth Amendment to the United States Constitution and article II, section 20, of the Colorado Constitution both prohibit cruel and unusual punishments. These provisions forbid extreme sentences that are grossly disproportionate to the crime. *Wells-Yates I*, ¶¶ 5, 10 (citing *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).

¶ 51 In assessing a defendant's challenge to the proportionality of their sentence, a court first conducts an abbreviated proportionality review. *People v. Wells-Yates*, 2023 COA 120, ¶ 15 (*Wells-Yates II*).

During an abbreviated proportionality review, the court considers two subparts to determine whether the sentence gives rise to an inference of gross disproportionality: (1) the gravity or seriousness of the offense and (2) the harshness of the penalty. *Wells-Yates I*, ¶¶ 7-8, 11.

¶ 52 The analysis expands slightly, however, when a defendant challenges the proportionality of a habitual criminal sentence. In that instance, the court must analyze the gravity or seriousness of all the offenses in question (the triggering offense and the predicate offenses) and the harshness of the sentence imposed on the triggering offense. *Id.* at ¶ 23. If this first step gives rise to an inference of gross disproportionality, the court must proceed to the second step and conduct an extended proportionality review. *See id.* at ¶ 7 (discussing the step-two analysis). But if the step-one analysis does not give rise to an inference of gross disproportionality, the proportionality challenge fails, and the court must uphold the sentence. *Id.* at ¶ 8.

¶ 53 Some offenses are "per se" grave or serious, allowing the court to skip over the first step of the abbreviated proportionality review. *Id.* at ¶ 13. The standard for designating offenses per se grave or

serious is whether the offense in question "necessarily involve[s] grave or serious conduct." *Wells-Yates I*, ¶ 63. For offenses that are not deemed per se grave or serious, the court may still determine on a case-by-case basis that a defendant's particular crime constituted a grave or serious offense after considering the surrounding facts and circumstances. *Id.* at ¶ 71; *see, e.g., People v. Tran*, 2020 COA 99, ¶ 101.

## B. Analysis

¶ 54 Carey challenges only the predicate offenses the court found to be grave or serious, including his second degree burglary and motor vehicle theft convictions in El Paso County Case No. 86CR3817, a sexual assault on a child conviction in El Paso County Case No. 87CR2842, and a possession of a controlled substance with intent to distribute conviction in El Paso County Case No. 06CR1847. We address each predicate offense separately and affirm the court's findings that each is grave or serious.

### 1. Case No. 86CR3817

¶ 55 In this case, Carey pleaded guilty to breaking into a John Deere facility with an accomplice by cutting a wire fence, hotwiring and stealing a truck, stealing a generator, and stealing cases of oil.

24

The court noted that both convictions were class four felonies and were completed rather than attempted crimes and that Carey acted as the principal. While acknowledging that these were not the most grave or serious offenses, the court found both to be grave or serious due to the significant financial losses suffered by the victim and Carey's substantial culpability. *See Wells-Yates I*, ¶ 12 (listing factors relevant to the gravity or seriousness of an offense). Considering the "facts and circumstances of the particular crime committed," *id.* at ¶ 71, we agree with the postconviction court that these convictions are somewhat grave or serious, *see Wells Yates II*, ¶¶ 48-51 (finding that a nonviolent second degree burglary of an unoccupied home to steal property was grave or serious).

### 2. Case No. 87CR2842

¶ 56    In this case, Carey pleaded guilty to having sexual relations with a fourteen-year-old child he knew. The postconviction court rejected his arguments that the victim's consent and that he had originally pleaded guilty under a deferred judgment mitigated the seriousness of the offense. Because the record supports the court's factual findings and because numerous courts have found sexual assault on a child to be grave or serious, we similarly conclude this

predicate offense is grave or serious. *See People v. McCulloch*, 198 P.3d 1264, 1269 (Colo. App. 2008) (finding an attempt to lure a seventeen-year-old boy into a consensual sexual encounter to be grave or serious); *People v. Strean*, 74 P.3d 387, 396 (Colo. App. 2002) (finding sexual assault on a child to be grave or serious).

### 3.  Case No. 06CR1947

¶ 57    In this case, Carey pleaded guilty to possession of a controlled substance (a class 2 felony), possession of a controlled substance with intent to distribute (a class 2 felony) and resisting arrest. Following a traffic stop, police officers recovered a large amount of cocaine and methamphetamine from Carey's vehicle, along with scales, numerous plastic bags, needles, and spoons. The court found these crimes grave or serious due to the large quantity of drugs and materials needed to distribute the drugs, Carey's admitted culpability, the high-level felony classification, and the fact that they were completed. Because the record supports the court's findings, and considering the specific circumstances of these crimes, we discern no error in the court's finding that both crimes are grave or serious.

### 4. Triggering Offenses

¶ 58    The postconviction court then considered the triggering offenses and found them to be grave or serious.  We first conclude that Carey's first degree burglary conviction is per se grave or serious.  *See Wells-Yates I*, ¶ 65.  Next, we conclude that Carey's second degree burglary conviction is grave or serious based on the fact that he broke into an occupied residence armed with a deadly weapon and then threatened and injured two occupants.  Finally, we conclude that Carey's two felony menacing convictions, which involved breaking into a residence while brandishing a deadly weapon, are also grave or serious.  *See Well-Yates I*, ¶ 64 (finding any offense involving knowing conduct and grave harm or threatened harm to the victim is grave or serious).

¶ 59    Considering these triggering offenses, together with the predicate offenses and their relative harm to society, we conclude that this is not one of those "'rare case[s]' in which [an] abbreviated proportionality review leads to an inference of gross disproportionality."  *Wells-Yates II*, ¶ 64.  Nor do we find the postconviction court's finding that two of his prior offenses were not grave or serious to be dispositive.  We need not deem every

27

predicate offense grave or serious to reject Carey's proportionality challenge. *See Wells-Yates I*, ¶ 24 ("[T]he inquiry is whether the corresponding triggering offense and the predicate offenses, considered together, are so lacking in gravity or seriousness as to suggest that the sentence is grossly disproportionate."); *see also Wells-Yates II*, ¶¶ 65-66 (finding no inference of gross disproportionality in habitual sentence for second degree burglary, despite deeming the predicate offenses "not especially grave or serious"). Accordingly, we affirm the sentence.

## VII.    Disposition

The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.